## HARMON *v.* HAGERTY AND LOUISVILLE BANKING COMPANY *v.* HAGERTY.

(*Jackson.* May 1, 1890.)

1. BILLS AND NOTES. *Given for interest in patent-right.*

Unless a note given for a patent-right discloses that fact upon its face, it does not fall within the statute providing that such note shall be "subject in the hands of any holder or assignee to all the legal and equitable defenses to which it was subject in the hands of the original payee, when the fact that it was given in such purchase appears on its face."

Act construed : Acts 1879, Ch. 228 (§ 2481 (M. & V.) Code).

2. SAME. *Indorsee requiring collateral security of indorser. Its effect.*

The fact that the indorsee, at the time of the purchase or discount of a note, required collateral security of the indorser for its payment, affords, if unexplained, an unfavorable inference as to the *bona fides* of the transaction; but where the negotiation of the note is shown to have been made in good faith in all other respects, the fact that such collateral security was required, if satisfactorily explained, is not of itself sufficient evidence to require the Court to declare the transaction *mala fide.*

FROM SHELBY.

Appeal from Chancery Court of Shelby County. B. M. ESTES, Ch.

MYERS & SNEED for Complainants.

GANTT & PATTERSON for Respondents.

FOLKES, J.   These causes were consolidated in the Court below, and heard together, resulting in a decree in favor of the banking company against Hagerty, for principal, interest, and protest fees upon a certain note for $3,333.33, executed by said Hagerty, payable to the order of Archer Harmon, and by the latter indorsed before maturity to the said banking company.   This decree is now before us on writ of error.

The contention on behalf of the maker of the note is that the note was given for an undivided one-fourth interest in certain patent-rights, the title to which was not wholly in the vendor, and that the assignment of the interest so purchased was incumbered with a certain reservation of royalties, the existence of which were kept secret from Hagerty; and that, by reason of these matters, and other transactions growing out of such purchase, and connected with the partnership formed for carrying on the business in which the patent-rights were to be used, the said Hagerty had equities against said note sufficient to defeat any recovery thereon; and that the Louisville Banking Company was not an innocent holder for value of said note so as to defeat such equities.

The Chancellor held that there was no fraud in the procurement of the note, and that no valid

defenses existed thereto, even against Harmon, the payee. He also adjudged that the bank was an innocent holder, and could recover on the note, even had there been the fraud and failure of consideration as charged by Hagerty.

In the view we have taken of the case, it is unnecessary here to discuss the voluminous proof on the question of fraud in the inception of the note. If the bank be an innocent holder of the note, the decree in its favor must be affirmed.

Inasmuch as this note does not disclose on its face that it was given for an interest in a patent-right, it does not fall within the Act of 1879, Ch. 228, carried into the M. & V. compilation at § 2481, allowing all defenses, legal and equitable, against the indorsee that might be made against the original payee. With this statute out of the way, we have to consider whether the bank is an innocent holder under the law merchant.

The maker of the note predicates his contention that it is not such holder upon the fact, which it is claimed is developed in the proof, that the payee, at the time the note was discounted, agreed to, and did leave with the bank, an amount of money equal to the face of the note, as collateral security for the ultimate payment of the note, and that in consequence of, and as a part of said agreement, the bank assumed to and has sued the maker, without appropriating said money or collateral of the indorser. This fact it may be, and is conceded, is a matter that can be looked to by

the Court as proof tending to show that the bank did not discount said note in good faith; and this fact, unexplained or unqualified by other proof, might well warrant the Court or jury, as the case might be, in finding that the transaction was a mere device, resorted to for the purpose of making out a case of *bona fide* purchase or discount on the part of the bank, so as to defeat the equities of the maker as against the payee.

But where the purchase or discount of the note is otherwise made in good faith, with no knowledge of any infirmities in the note, and nothing to excite suspicion in the mind of the party discounting or purchasing the same, the mere fact that the bank, being unacquainted with the maker, and knowing nothing of his financial rating, required or accepted collateral security from its customer, the indorser, at whose instance and for whose benefit the discount was made, will not be sufficient to require the Court to hold as a matter of law that such bank is not an innocent holder. Here the president and cashier of the bank both swear positively' that they knew nothing of the consideration for which said note was given, save that it was for some kind of property; that they discounted it for the accommodation of the payee, who was a regular customer and depositor with the bank; that their customer told them at the time the note was good and the payor solvent, and that he had no doubt but what it would be paid at maturity, but that he preferred to have it

discounted, so that he would not be appealed to by the maker as his friend for delay or extension.

It is urged by counsel for the bank that the agreement as to collateral was not made at the time of the discount, but only after the maker had defaulted; and such is the statement of the payee in his deposition. But from the testimony of the president of the bank, while his language may be open to the same construction, it appears to us to point to the time of the discount as the time when such agreement was made, and in reaching the conclusion that it does not defeat the right of the bank to recover as an innocent holder in due course of trade, we have accepted the proof as showing that the agreement was contemporaneous with the act of purchase.

The decree of the Chancellor will be affirmed, so far as it renders judgment on the note in favor of the bank against Hagerty.

But inasmuch as there is still pending in the Court below one of these bills for the settlement of the partnership accounts between Harmon, Hagerty, and Warren, growing out of the business connected with these patents, in which the matters of fraud in the procurement of said note by Harmon may be material to Hagerty, it is deemed proper to so modify the decree of the Chancellor as to leave open the question of fraud and failure of consideration for said note as between Hagerty and Harmon.