BANK *v.* STOCKELL.

(*Nashville.*     February 22, 1893.)

1. NEGOTIABLE INSTRUMENTS.    *Given in purchase of patent-right.*

   The unexplained initials, "C. I. P.," written upon the face of a negoti-
   able note do not convey notice to an innocent indorsee of the note
   before its maturity, for value, and in due course of trade, that it was
   given in purchase of a patent, known as the "Chapin Iron Process,"
   so as to let in defenses against such indorsee under the statute pro-
   viding that a note given in purchase of a patent-right, "shall be
   subject, in the hands of any holder or assignee, to all the legal and
   equitable defenses to which it was subject in the hands of the original
   payee, when the fact that it was so given in such purchase appears
   on its face."

   Code construed: § 2481 (M. & V.).

   Case cited and approved: Bank *v.* Hagerty, 88 Tenn., 705.

2. SAME.    *Indorsement of note as collateral security.*

   A bank is protected as an innocent indorsee or holder, where it took a
   negotiable note upon the payee's indorsement, before its maturity
   and without notice of defenses, to hold it as collateral security for
   another note of like amount indorsed by the payee and cashed for his
   benefit upon the credit of such collateral security.

---

FROM   DAVIDSON.

---

Appeal from Chancery Court of Davidson County.
ANDREW ALLISON, Ch.

JOHN RUHM & SON for Bank.

Bank *v.* Stockell.

JAMES S. PILCHER for Stockell.

WILKES, J. The bill in this cause was filed to recover the amount of two notes made by C. H. Stockell to John F. Haskins, and by him indorsed to plaintiff. The notes are as follows:

"(1) $1,000. CHATTANOOGA, TENN., April 8, 1890.

"Four months after date I promise to pay to the order of John F. Haskins one thousand dollars, at the First National Bank, Chattanooga, Tenn. Value received, C. I. P.

"C. H. STOCKELL."

"(2) $750. CHATTANOOGA, TENN., May 29, 1890.

"Four months after date I promise to pay to the order of John F. Haskins seven hundred and fifty dollars, at the First National Bank, of Chattanooga, Tenn. C. I. P.

"C. H. STOCKELL."

These notes were renewals of two others previously given for a part interest in a patent called the "Chapin Iron Process," which Haskins had contracted to introduce and extend over several States, including Tennessee.

It is insisted by Stockell, the maker of the notes that Haskins, the payee, failed to prosecute the work of introduction, and thereby forfeited all right to the patent, and hence these notes, executed for a part interest, were without consideration.

The bank insists, however, that it is an inno-cent holder of the notes, for full value, given at the time of indorsement, which was prior to their maturity.

As against the bank, Stockell insists that it had actual notice of the consideration on which the notes were based when it took the notes, and, further, that they had upon their face notice that they were given for a patent-right.

Upon an examination of the record, we think it fails to show that the bank had actual notice as claimed.

But it is insisted that the letters, "C. I. P.," on the face of the notes is sufficient notice of the fact that they were given for a patent, to wit, the "Chapin Iron Process," so as to bring them within the rule laid down in § 2481 of the Code (M. & V.), which is as follows:

"A note or other security, given in this State in the purchase of a patent-right, or any interest therein, shall be subject, in the hands of any holder or assignee, to all the legal and equitable defenses to which it was subject in the hands of the original payee, when the fact that it was so given in such purchase appears on its face."

We think the initials, C. I. P., standing unex-plained on the face of the notes, give no notice whatever of their meaning, nor could any one, from them, in any way, ascertain that the consid-eration of the notes was the sale of a patent, or any interest therein; and unless such fact appears

on the face of the notes in an intelligible form, they do not fall within the provisions of the statute. *Bank* v. *Hagerty*, 4 Pickle, 705.

It is next insisted that the notes were transferred to the bank as collateral, or in payment of a pre-existing debt. The origin of the transaction between Haskins and the bank is this: Haskins was the President of the South Tredegar Iron Company, and had advanced money to it and loaned it his credit. Desiring to obtain some funds for his own use, he executed to the bank notes of the company, with the indorsement of himself and another, for the same amount as the Stockell notes. At the same time he indorsed the Stockell notes, which were not then due, and placed them as collateral for the note of the company so indorsed by himself and another. The bank thereupon discounted the note of the company, with the notes of Stockell attached as collateral, and entered up the proceeds to the individual account of Haskins.

While there is some uncertainty about the exact date when this discount was made, there is evidence sufficient to show that it was prior to the maturity of the Stockell notes, and that the company's note was discounted on the faith of the Stockell collateral. The bank preferred to discount the note of the company, with the Stockell collateral attached, to discounting the Stockell notes, because the Stockell notes had longer to run to maturity than the usual discounts of the

bank, and beyond the maturity of the company's notes. These original notes were renewed when they fell due, and so were the Stockell notes renewed when they matured, but they remained in the hands of the bank, as collateral, indorsed in the same manner as the original notes had been.

Stockell, in a cross-bill filed by him, alleges that a part of the money furnished Haskins upon the notes was used by him in the erection of a house on Lookout Mountain, which was afterward transferred to the bank, and this is admitted by Haskins.

We are of opinion that the bank, having received the Stockell notes before their maturity, by regular indorsement from Haskins, the payee, and having at the time parted with its funds upon the faith of the collateral notes attached to the notes of the company, it is a *bona fide* holder for full value in due course of trade, and entitled to all the rights of an innocent purchaser, the original notes of the company, for which the collaterals were given, being still unpaid, and for the same amount as the collaterals. Daniel on Negotiable Instruments, Secs. 824, 825; 2 Am. and Eng. Ency. of Law, p. 391.

There are other assignments of error, based upon equities existing between Stockell, the maker, and Haskins, the payee, but, as an innocent holder by transfer before maturity and for full value, the bank cannot be affected by them.

We therefore affirm the decree of the Chancellor, with costs.