ATLAS NAT. BANK v. HOLM et al.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1896.)

No. 246.

1. VALIDITY OF NOTE—ILLEGAL CONSIDERATION.
  A note given in part in consideration of an agreement to refrain from bidding at a public sale of goods by a statutory assignee is invalid, except in the hands of an innocent purchaser.

2. BONA FIDE PURCHASER—BURDEN OF PROOF.
  In order to deprive one of the character of a bona fide purchaser, it is not enough that he neglected to make the inquiry which a prudent man would or ought to have made, but he must have acted in bad faith.

3. SAME.
  There is no presumption that a purchaser of a note was aware of existing defenses thereto.

In Error to the Circuit Court of the United States for the Western District of Wisconsin.

H. M. Lewis and H. E. Briggs, for plaintiff in error.

James Wickham and F. R. Farr (R. M. Bashford, of counsel), for defendants in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge. The brief of the plaintiff in error does not, as required by our rule 24, contain (1) a concise abstract or statement of the case; (2) a specification of the errors relied on; and (3) a brief of the argument. The statement, instead of being concise, is made up largely of quotations of testimony from the bill of exceptions, and extends over 44 of the 56 pages which the brief contains. A specification of errors, distinct from the argument, is entirely wanting.

The action was brought by the plaintiff in error, the Atlas National Bank of Chicago, against Andrew Holm, Gunder Thompson, Nils Holm, and W. W. Winterbotham, of Eau Claire, Wis., the defendants in error, upon a promissory note, executed February 18, 1893, for the sum of $4,000, payable six months after date, at the Bank of Eau Claire, to the order of the John V. Farwell Company, a corporation organized under the laws of Illinois, and, as it is alleged, indorsed by

that company to the plaintiff in error before maturity and for value. The defendants Holm and Winterbotham joined in an answer to the effect that Andrew Holm and Gunder Thompson, who had been doing business at Eau Claire as partners prior to February 18, 1893, had made an assignment for the benefit of creditors; that their property, consisting of a stock of dry goods, was about to be sold by the assignee at public auction; and that the consideration of the note was an agreement by the John V. Farwell Company not to bid at the sale, to discourage others from bidding, and to assign to Nils Holm a claim of that company against Holm & Thompson; that the company, failing to assign, collected and applied to its own use the dividends upon its claim; and, further, that the plaintiff was not a good-faith purchaser, and was attempting to collect the note for the benefit of the John V. Farwell Company, which, it was also alleged, had repaid to the bank, before suit, whatever interest the latter had had in the note. The proof shows that contemporaneously with the making of the note the following agreement was executed:

"Eau Claire, Wis., February 18, 1893.

"For value received, I hereby guaranty the payment of the accounts and notes of the John V. Farwell Company against Holm & Thompson, of Eau Claire, Wisconsin. It is also agreed that the same shall be placed in notes running three and six months, the same to be signed, guarantied, or indorsed by me. Said notes to be. dated this 18th day of February, 1893. The John V. Farwell Company, in consideration thereof, withdraws from bidding at the sale of said stock, and assigns its claim to the undersigned against Holm & Thompson, now ready to be filed against their insolvent estate.

"[Signed]                         Nils Holm.
                    "John V. Farwell Company, Harding."

The error first assigned might be disregarded, because it embraces in a single specification the refusal of a number of requests for instruction (Vider v. O'Brien, 10 C. C. A. 385, 18 U. S. App. 711, and 62 Fed. 326); but it is clear that each of the requests was properly denied, the first and second because irrelevant, and the third because embraced substantially in the charge given.

The note upon which the action was brought, it is undisputed, was given in part consideration of the agreement of the Farwell Company to refrain from bidding at a public sale of goods by a statutory assignee, and, for that reason, as the court properly told the jury, was invalid, except in the hands of an innocent purchaser. Story, Eq. Jur. § 293; Doolin v. Ward, 6 Johns. 194; Thompson v. Davies, 13 Johns. 112; Phippen v. Stickney, 3 Metc. (Mass.) 384; Gibbs v. Smith, 115 Mass. 592. It was therefore unnecessary that the jury should be instructed, as set forth in the first and second requests, concerning other and lawful plans for bidding, without competition between themselves, which the parties to that agreement may have considered before reaching an understanding. The agreement as finally made being essentially illegal, any inquiry into the preliminary negotiations or intentions of the parties was necessarily irrelevant.

At the request of the defendants in error, the court gave two special instructions, upon each of which error is assigned. They are as follows:

"The consideration of the note being illegal, in whole or in part, for the reason already stated, the note was void not only in the hands of the John V. Farwell Company, the payee therein named, but the note is also invalid in the hands of the Atlas National Bank, the plaintiff in this action, if the Atlas National Bank purchased the note with knowledge of the illegal or fraudulent character of the consideration, or with such knowledge of existing facts and circumstances as ought to have put an ordinarily prudent man upon inquiry. If the circumstances disclosed by the testimony lead you to believe that the officers of the Atlas National Bank, at the time the note was discounted, refrained from making inquiry in respect to the consideration thereof, lest they thereby become acquainted with the transaction out of which the note originated, the plaintiff herein cannot occupy the attitude of a holder in good faith without notice."

"Where there is illegality in the transaction out of which the note originated, the presumption is that the payee therein named, who has been a party to the wrongful act, will part with the note thereby acquired for the purpose of enabling some third party to enforce payment of the same. This presumption operates against the holder of the note, and suspicion follows the paper in his hands, and fastens upon his title; and it is for this reason that the burden is cast upon the plaintiff to show that he purchased the note before maturity, in good faith, in the usual course of business, for a valuable consideration, and without knowledge of existing defenses."

The point is made that the first of these instructions contains three distinct propositions, each of which, if claimed to be erroneous, should have been separately specified in the assignment of errors. The defendants in error are not in a position to insist upon so strict an application of the rule. They requested the instruction, as a single one, for the single purpose, clearly, of declaring the rule by which the jury should determine the good faith of the bank in purchasing the note. But it does not state the rule correctly, and is perhaps objectionable in other respects. The last clause, which presents the theory of bad faith on the part of the officers in refraining from inquiry into the consideration of the note, should not have been given if, as is contended, there was no evidence to support the hypothesis. U. S. v. Breitling, 20 How. 252; Goodman v. Simonds, Id. 343, 359. The essential error, however, is in the proposition that the note was invalid in the hands of the bank if purchased "with such knowledge of existing facts and circumstances as ought to have put an ordinarily prudent man upon inquiry." There has been a contrariety of rulings on the subject, but the weight of authority has long been (in the federal courts, certainly, since Swift v. Tyson, 16 Pet. 1) that one who takes an assignment of commercial paper before maturity, paying value, without notice of infirmity in the title or consideration, is deemed a good-faith purchaser, and that, to deprive him of that character, it is not enough that he neglected to make the inquiry which under the circumstances a prudent man would or ought to have made. It is not a question of negligence, but of bad faith. "Gross negligence may be evidence of mala fides, but it is not the same thing." Goodman v. Harvey, 4 Adol. & E. 870. "And the proper inquiry is, did the party seeking to enforce the payment have knowledge, at the time of the transfer, of the facts and circumstances which impeach the title as between the antecedent parties to the instrument? And, if the jury find that he did not, then he is entitled to recover, unless the transfer was attended by bad

faith, even though the instrument had been lost or stolen. Every one must conduct himself honestly in respect to the antecedent parties, when he takes negotiable paper, in order to acquire a title which will shield him against prior equities. While he is not obliged to make inquiries, he must not willfully shut his eyes to the means of knowledge which he knows are at hand, * * * for the reason that such conduct, whether equivalent to notice or not, would be plenary evidence of bad faith." Goodman v. Simonds, 20 How. 343, 366. "He can lose his right only by actual notice or bad faith." Swift v. Smith, 102 U. S. 442, 444. See, also, 1 Daniel, Neg. Inst. (4th Ed.) § 775; Tied. Com. Paper, § 289; Hamilton v. Vought, 34 N. J. Law, 187; Cross v Thompson, 50 Kan. 627, 32 Pac. 357; Bank v. Stockwell, 92 Tenn. 252, 21 S. W. 523; Railway, etc., Co. v. Dick, 8 U. S. App. 99, 3 C. C. A. 149, and 52 Fed. 379; Murray v. Lardner, 2 Wall. 110; Shaw v. Railroad Co., 101 U. S. 564; Lytle v. Lansing, 147 U. S. 59, 13 Sup. Ct. 254; Thompson v. Bank, 150 U. S. 231, 14 Sup. Ct. 94.

The second of these instructions was also erroneous. There may be a just presumption of fact, but hardly of law, that the payee of a note which is illegal or for any reason invalid will make a transfer to one who may enforce payment. But, in order to effect that purpose it is necessary that the assignee shall be a purchaser in good faith, and hence no inference of fact to the contrary—saying nothing of legal presumption—could reasonably arise from the mere fact of assignment. It certainly cannot be justly said that suspicion follows the paper and fastens upon the title of the purchaser. "Possession of such an instrument, payable to bearer, or indorsed in blank, is prima facie evidence that the holder is the proper owner and lawful possessor of the same. * * * The instrument goes to the jury clothed with the presumption that the plaintiff became the holder of the same for value at its date, in the usual course of business, without notice of anything to impeach his title. * * * Clothed, as the instrument is, with those presumptions, the plaintiff is not bound to introduce any evidence to show that he gave value for the same until the other party has clearly proved that the consideration of the note was illegal, or that it was fraudulent in its inception, or that it had been lost or stolen before it came to the possession of the holder." Collins v. Gilbert, 94 U. S. 753. The presumption in favor of the holder of negotiable paper, which arises from the mere fact of possession, has often been declared. Among the recent cases are Commissioners v. Clark, 94 U. S. 278; Montclair v. Ramsdell, 107 U. S. 147, 2 Sup. Ct. 391; Pana v. Bowler, 107 U. S. 529, 2 Sup. Ct. 704; Morgan v. U. S., 113 U. S. 476, 5 Sup. Ct. 588; King v. Doane, 139 U. S. 166, 11 Sup. Ct. 465; Kneeland v. Lawrence, 140 U. S. 209, 11 Sup. Ct. 786. These cases recognize the exception, which is so well established and comprehensive as to be itself a rule, that "if, in a suit brought by the indorsee or transferee of a negotiable instrument, the maker or acceptor, or any party who is primarily bound by the original consideration, proves that there was fraud or illegality in the inception of the instrument, the burden of proof is thrown on the plaintiff to show

that he is a holder for value." Pana v. Bowler, 107 U. S. 542, 2 Sup. Ct. 704, and cases cited. Or, as it is stated in King v. Doane, the question whether the plaintiff did or did not give value, without notice, "must be considered with reference to the established rule that if, in an action by an indorsee against the maker, a negotiable note is shown to have been obtained by fraud, the presumption, arising merely from the possession of the instrument, that the holder in good faith paid value, is so far overcome that he cannot have judgment unless it appears affirmatively from all the evidence, whether produced by the one side or the other, that he, in fact, purchased for value. * * * In the case supposed, he must show that he paid value. That fact being established, he will be entitled to recover, unless it is proved that he purchased with actual notice of the defect in the title, or in bad faith, implying guilty knowledge or willful ignorance." That is to say, in the cases supposed, the indorsee of a note must prove that he paid value, but he is not required, besides, to overcome a presumption against him, and certainly not to remove from his title a taint of suspicion. The inquiry is one of fact, to be determined by the preponderance of the evidence, unaffected by legal presumption one way or the other; and the reason the burden of proof is cast, contrary to the rule of pleading, upon the indorsee, is, as we suppose, because, if he was a good-faith purchaser, he has peculiar, if not exclusive, knowledge of the fact, and to find evidence of the contrary, if true, would be difficult and often impossible for the defendant in the action.

A third instruction, given at the request of the defendants in error, we have not considered critically; but, if not in any respect distinctly erroneous, it is objectionable because it confuses different theories of defense.

The judgment below is reversed, and the case remanded for a new trial.