STATE *v.* COOK.

*(Jackson.* June 24, 1901.)

1. PATENT RIGHTS. *State's regulation of sale constitutional.*

State legislation denying the privileges of negotiability to notes showing on their face that they were given for a patent right, and denouncing and punishing as a felony the taking of a note for a patent right, or any interest therein, without stating on its face that it was given upon such consideration, is not in contravention of that clause of the Federal Constitution which declares that "the Congress shall have power to promote the progress of science and useful arts by securing, for limited times, to authors and inventors the exclusive right to their respective writings and discoveries." Such legislation constitutes a legitimate exercise of police power, and limits, not the proper use, of property in patent rights, but its abuse.

Constitution construed: U. S. Const., Art. 1, Sec. 8, Subsec., 8.

Acts construed: Acts 1897, Ch. 77; Acts 1879, Ch. 228.

Code construed: ¿ 3216 (S.); ¿ 2481 (M. & V.).

Cases cited: Harmon *v.* Haggerty, 88 Tenn:, 705; Bank *v.* Stockell, 92 Tenn., 252; State *v.* Scott, 98 Tenn., 254; Tennessee *v.* Butler, 3 Lea, 222; Harbison *v.* Knoxville Iron Co., 103 Tenn., 439.

2. CLASS LEGISLATION. *Not vicious, when.*

A statute which denounces and punishes as felony the taking of notes for patent rights without explicitly stating that fact on the face of the note, is not vicious class legislation, although no such provision is made as to the taking of notes upon any other consideration. The classification upon which such statute is based is not capricious, but founded on good and sufficient reasons.

Constitution construed: Art. 2, Sec. 8.

State *v.* Cook.

Acts construed: Acts 1897, Ch. 77.
Case cited: State *v.* Schlitz Brewing Co., 104 Tenn., 731, 732.

FROM  HENDERSON.

Appeal from Circuit Court of Henderson County. LEVI S. WOODS, J.

ATTORNEY-GENERAL PICKLE AND BORHAM for the State.

Ross & Ross for Cook.

CALDWELL, J.   In March, 1901, N. T. Cook was indicted in the Circuit Court of Henderson County for violating Sec. 1 of Ch. 77, of the Acts of 1897, in that he, in his own behalf, as charged in one count, and in the representative capacity as secretary of B. D. Keeton & Co., as charged in another count, on November 2, 1900, took and re ceived the promissory note of W. J. Reddin for $75, as part consideration for a territorial interest in a certain patent for a boring and mortising ma- chine, without having the note show clearly on its face that it was given for an interest in a patent right.   The indictment was quashed on the ground that the enactment on which it was ·based is void, for repugnancy to that provision of the Federal Constitution relating to patents, and the State ap-

pealed in error. The statute in question is as follows:

"SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee,* That hereafter it shall be unlawful for any person, either in his own behalf or in a representative capacity, to take or receive for the sale of a patent right, or any interest therein, a note or other written security, given for such right or any interest therein, unless it shall clearly appear upon the face of the note or other security that the same is given in the parchase of a patent right or an interest therein.

"SEC. 2. *Be it further enacted,* That every person violating the first section of this Act shall be deemed guilty of a felony, and upon conviction thereof shall be punished for each offense by imprisonment in the penitentiary not less than one year nor more than five years." Acts 1897, Ch. 77.

That part of the Federal Constitution supposed to have been violated by that Act provides that " the Congress shall have power to promote the progress of science and useful arts by securing, for limited times, to authors and inventors the exclusive right to their respective writings and discoveries." U. S. Con., Art 1, Sec. 8, Subsec. 8.

As expressly stated therein, the object of that provision is to promote the progress of science and useful arts in the United States, and that object is to be accomplished by congressional legislation, which shall secure to authors and inventors, for limited

times, the *exclusive right* to their respective writings and discoveries in every State. Congress has passed numerous Acts with that end in view. Some of the most important of them are incorporated in the Revised Statutes of the United States at Section 4883 *et seq.* They prescribe the mode of obtaining letters patent, and secure to patentees the exclusive right to their respective patents.

"The exclusive right" referred to in the organic law, and secured by the statute, is the equivalent of *exclusive ownership*, and ownership includes the power to sell. The right of sale is an inherent and essential part of unlimited ownership; it is one of the most important elements of property. 169 U. S., *Holden* v. *Hardy*, 391; *Harbison* v. *Knoxville Iron Co.*, 103 Tenn., 439. Moreover, Sec. 4898 of the Revised Statutes expressly authorizes every patentee to assign his patent or any interest therein, by proper written instrument, and gives his assignee the same authority.

The essence of the objection urged by the defendant against the State legislation, under which he stands indicted, is that it, as he contends, violates the Constitution of the United States in that it restricts and impairs his right to sell his patent or any interest therein. Though a great deal may be and has been said in support of that objection, this Court does not think it tenable. The Act assailed was not intended to have, and, in fact, it does not, have the effect ascribed to it by the defendant. It

does not really restrict or impair the right of the true owner to legally sell any patent or interest therein. Since the passage of the Act, as before, every patentee and every assignee of a patent, or interest therein, may, without let or hindrance on the part of the State, make as many sales as he can find purchasers, and at such prices and on such terms as the contracting parties may agree upon. No burden is placed on the seller, no restraint on the purchaser. The object is not to restrict or impair the right of sale in any degree, but only to protect purchasers in some measure against the deceptive and fraudulent exercise of that right.

The Legislature for more than twenty years has regarded such protection expedient for the general welfare of the State, and, to secure it, has passed two Acts. The first one, Ch. 228 of the Acts of 1879, provides that "a note or other written security given in this State in the purchase of a patent right, or any interest therein, shall be subject, in the hands of any holder or assignee, to all equitable defenses to which it was subject in the hands of the original payee, when the fact that it was given in such purchases appears on its face." Code, M. & V., 2481; Shan., 3216.

That act came before this Court for construction and was treated as valid without considering the question of its constitutionality in *Harmon* v. *Hagerty*, 88 Tenn., 705, and *Bank* v. *Stockell*, 92 Tenn., 252. In each instance the enactment was

confined to its terms, and was held, not to embrace a note actually given for an interest in a patent but not showing that fact upon its face.

With a view of compelling a recital of that fact in all such notes, and bringing them within the operation of that Act Ch. 77 of the Acts of 1897, that now under consideration, was passed.

It is supplemental to the Act of 1879 and only penalizes the seller's failure to have any written obligation he may take for a patent or any interest therein show upon its face the consideration for which it is given and thereby renders the former enactment more efficient.

The two statutes are to be construed together as different parts of the same legislative scheme. Their combined effect when each is strictly observed and enforced, is simply to prevent written obligations for the purchase of patents or interests therein from being negotiable in the highest sense, and to subject them in whosesover hands to all defenses available to the maker against the original payee.

So construed, neither act by itself, nor the two combined into single scheme, can be truly said to contravene any provision of the Federal Constitution or Statutes in reference to patents, or to restrict or impair the right of sale guaranteed thereby. The grant of an exclusive right to sell a patent in Tennessee does not imply that the State shall maintain such laws as will make notes executed for such patents or an interest therein negotiable, nor that

State *v.* Cook.

it shall not pass laws subjecting them to all proper defenses as against all holders. It might be to some pecuniary advantage to some real or pretended patentee that notes executed to him for his patent, or an interest therein should be closed with the completest negotiability, but the privilege of enjoying that advantage is not embraced in his right to sell, nor is a statute that denies him such advantage, an abridgment of that right, or a detraction from it. A patentee's right of sale as such is, of course, the same in every state; and yet it is obvious that his sale notes may be negotiable in some States, and non-negotiable in others according to their local laws on that subject.

Again if his right of sale, which must be the same in every State, included the privilege of demanding negotiability of sale notes, all States though otherwise empowered and permitted to adopt laws of the one type or the other at will, would be constrained, at least as to him, to conform them to his personal interest, an idea not to be entertained for an instant. See *Tod* v. *Wick*, 36 Ohio St. 370.

These statutes are also sustainable as valid police regulations, having been passed in good faith for the real promotion of the public welfare, and being well calculated to accomplish that end through the fair and much needed protection thereby afforded against imposition and fraud so often and so easily perpetrated in the sale of the peculiar incorporeal right, or intangible property, contemplated.

We are aware of no case in which the Supreme Court of the United States has considered the validity or invalidity of like legislation. The decisions of other Courts are not uniform. Some of them deny and others affirm the constitutionality of similar statutes, the earlier adjudications being mainly of the former class and the later ones generally of the latter class. Among the cases in which the denial is made are: *Ex parte Robinson*, 2 Bissell, 309; *Helm* v. *Bank*, 43 Ind., 167 (S. C. 13 A. R., 395); *Hollida* v. *Hunt*, 70 Ill., 109 (S. C. 22 Am. Rep., 63); *Cranson* v. *Smith*, 37 Mich., 309 (S. C. Am. Rep., 514); *Crittenden* v. *White*, 23 Minn., 24 (S. C. 23 Am. Rep., 676); *Woolen* v. *Banker*, Am. Law Rec., 236 (S. C. note, 22 Am. Rep., 69). And among those making the affirmative are: *Berchill* v. *Randall*, 102 Ind., 258 (S. C. 52 Am. Rep., 695; *New* v. *Walker*, 108 Ind., 365 (S. C., Am. Rep., 40); *Tod* v. *Wick*, 36 Ohio St., 370; *Hashell* v. *Jones*, 86 Pa. St., 173; *Hedrick* v. *Roessller*, 109 N. Y., 127; *Tilson* v. *Gatling*, 60 Ark., 114; *Mason* v. *McLeod*, 57 Kan., 105 (S. C. 41 L. R. A., 548). If necessary, other cases of each line might be cited.

*Ex parte Robinson, supra*, which stands at the head of those cases declaring legislation of this kind violative of the Federal Constitution, and upon whose authority the most of them seem to be rested, is believed by some Courts to have been overthrown

by the reasoning of the Supreme Court of the United States in *Patterson* v. *Kentucky*, 95 U. S., 501 (*Reeves* v. *Corning*, 51 Fed. Rep.; *Berchill* v. *Randall*, 102 Ind., 297); but a different view of that reasoning was expressed and the doctrine of *Ex parte Robinson* applied in *Castle* v. *Hutchinson*, 25 Fed. Rep., 304. However that may be, it is certain that the earlier Indiana cases which followed *Ex parte Robinson* have been overruled by later ones which distinctly assert the opposite doctrine, as do most of the later cases everywhere. In *Macon* v. *McLeod*, *supra*, which is the latest of all these cases coming under our observation, the Court after reciting the several provisions of the Kansas statutes, including one like that contained in our Act of 1897, said: "In our opinion these provisions do not touch upon the federal power, nor interfere with the rights secured to the patentee by the Federal law. It is true that no State can interfere with the right of the patentee to sell and assign his patent, nor take away any essential feature of his exclusive right. The provisions in question, however, have no such purpose or effect. They are in the nature of police regulations designed for the protection of the people against imposition and fraud. There is great opportunity for fraud and imposition in the transfer of intangible property, such as exists in a patent right, and many States have prescribed regulations for the transfer of such property, differing essentially from those which control the transfer of

other property. There were some early decisions holding that such regulations trenched upon the federal power and the rights of the patentee, but recent authorities hold that reasonable police regulations may be enacted by the State without usurping any of the powers of the federal government or infringing upon the exclusive right of the patentee.''

It cannot properly be assumed that every requirement of the State may make of a patentee in connection with the sale of his patent is an unauthorized and illegal interference with the right granted him by the federal government. Some requirements that have been made from time to time deserve that characterization because really of a burdensome and unjust nature, while others do not, because not of that nature. One instance of the former kind is a requirement that the patentee shall pay a license tax for the privilege of selling his patent in the State. Legislation making this exaction, like that laying a similar burden on interstate commerce (*Robbins* v. *Taxing District*, 120 U. S., 129; *State* v. *Scott*, 98 Tenn., 254), is repugnant to the federal Constitution, and, therefore, null and void. *People of New York* v. *Board of Assessors*, 156 N. Y. L., 417 (S. C. 42 L. R. A., 290); *Kentucky* v. *Petty* (Ky.) 29 L. R. A., 786; *Tennessee* v. *Butler*, 3 Lea, 222. An instance of the other kind is afforded by the present enactment, which, as already seen, is neither burdensome nor unjust.

State v. Cook.

It should be observed in passing, that there is a marked difference under the law between the right to sell the patent itself and the right to sell the patented article. The federal government protected the former (cases last cited), but not the latter from State taxation. *Webber* v. *Virginia*, 103 U. S., 344. Indeed, the State may, by reasonable police legislation, actually exclude the patented article, when deemed dangerous, from sale at all in the State. *Patterson* v. *Kentucky*, 97 U. S., 501, affirming; *Patterson* v. *Commonwealth*, 11 Bush., 131 S. C. 21 Am. Rep., 220.

Notwithstanding the legal distinction between the right to sell the patent and the right to sell the patented article, so clearly defined in *Patterson* v. *Kentucky*, 97 U. S., 501, and *Webber* v. *Virginia*, 103 U. S., 344, and the greater latitude allowed the States in reference to the latter, we think the announcement of their general police power made in each of these cases conclusive in favor of the constitutionality of the Act impeached in this case.

Another ground of the motion to quash (not sustained by the learned Circuit Judge) is that the Act is vicious class legislation, and, therefore, violative of Sec. 8, of Art. 2, of the State Constitution, and void. This impeachment is not sustainable. The Act is, in fact, class legislation, in that it applies alone to those who sell patents or interests therein, but it is not of the vicious kind, because the classification is natural and reasonable, and not

State v. Cook.

arbitrary and capricious. The latter and not the former kind of partial legislation is obnoxious to the organic provision mentioned, and also to Sec. 8, of Art. 1, of the State Constitution, and to Sec. 1 of the Fourteenth Amendment to the Constitution of the United States, *Petit* v. *Minnesota*, 177 U. S., 184; *State* v. *Schlitz Brewing Co.*, 104 Tenn., 731, 732, and citations. The fact that patent rights constitute a large and peculiar class of property, and that sales of them afford unusual and peculiar opportunities for · the employment of imposition and fraud is a good reason for the passage of a law applicable to them alone. It commends the present Act's classification as reasonable and natural, and saves it from condemnation as invalid class legislation. Indeed, it is not essential to the validity of class legislation that the ground of the classification should be found by the Court to be so distinct and potent, as it undoubtedly is in this case "The State may distinguish, select, and classify objects of legislation, and necessarily the power must have a wide range of discretion." *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S., 294.

"And this because of the function of legislation and the purposes to which it is addressed. Classification for such purposes is not invalid, because not depending upon scientific or marked differences in things or persons or in their relations. It suffices if it is practical, and is not reviewable unless pal-

State *v.* Cook.

pably arbitrary." *Orient Insurance Co.* v. *Daggs,* 172 U. S., 562.

The last two cases, with many others, decided by the same distinguished Court, were cited on the same subject in *State* v. *Schlitz Brewing Co.*, 104 Tenn., 732.

Discovering no constitutional infirmity in the law challenged by the defendant, but being satisfied of its validity for the reason stated herein, the judgment of the Court below is reversed and the case remanded for further proceedings.