## In re HOPPER-MORGAN CO.

### (District Court, N. D. New York. October 26, 1907.)

1. BILLS AND NOTES—TRANSFER OF NEGOTIABLE NOTE—DEFENSES AGAINST INDORSEE.

The holder of an accommodation note, with authority to use it as collateral only, has no right to sell it outright, nor can a person dealing with him, with knowledge of the limited use to which the note may be put, obtain title thereto by an outright purchase.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 7, Bills and Notes, § 817.]

2. SAME—BONA FIDE PURCHASER.

Bad faith on the part of the purchaser of a negotiable note may be shown by a willful disregard of and refusal to learn the facts when avail-

able and at hand, which would have shown an infirmity in or want of title to the note.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 7, Bills and Notes, §§ . 821–824.]

3. SAME.

A purchaser of a negotiable note from one to whom it was transferred by indorsement, with knowledge that the indorser was not the owner of the note and was authorized to use it as collateral only, is not entitled to protection as a bona fide holder.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 7, Bills and Notes, § 829.]

4. BANKRUPTCY—PROVABLE DEBTS—INDORSEE OF ACCOMMODATION NOTE OF CORPORATION.

The treasurer of a bankrupt corporation, prior to the bankruptcy, executed an accommodation note in its name without authority and without consideration. Claimant, which was a commercial corporation not engaged in the banking business, outside of its usual course of business, purchased such note from an indorsee, having knowledge at the time that the person from whom the latter obtained it was not the owner of the note and was authorized only to use it as collateral. *Held*, that claimant was not a bona fide holder of the note, and that, its invalidity in its inception being shown, it was not entitled to prove the same against the estate of the maker in bankruptcy without proving affirmatively that its immediate indorser was a bona fide holder for value.

In Bankruptcy. Proceeding to review the decision of referee in bankruptcy disallowing the claim of the Robertson Paper Company on a promissory note of $2,500, dated July 25, 1905. No payment had been made on said note, and the claim is for the face thereof, with interest.

See 154 Fed. 249.

Fish, Richardson, Herrick & Neave, for claimant.
Brown, Carlisle & McCartin, for trustee.

RAY, District Judge. The bankrupt, the Hopper-Morgan Company, is a manufacturing corporation organized and existing under the laws of the state of New York. The claimant, Robertson Paper Company, is a corporation organized and existing under the laws of the state of Vermont.

Prior to July 25, 1905, the treasurer of the bankrupt company, one Roger Morgan, without authority from the company, issued and delivered to one Trautwine a number of notes purporting to be the notes of the company, upon the agreement that they were to be used as collateral only and for the accommodation of the Emerson Manufacturing Company, a corporation, and would be taken up and returned before due so as not to become a charge upon the Hopper-Morgan Company. Trautwine was to pay 3 per cent. for this use of such notes. After these notes had passed into the hands of Trautwine, and at about the time same were to become due, Morgan, without authority of the company, made the note in question, and delivered the same to one Morton, upon the agreement that it should be used for the same purpose only for which one of the original notes, and which it was to replace, had been issued. Morton paid nothing for this renewal note. It does not appear who held the note of which the note in question was

a renewal, but it is conceded in the agreed state of facts that the note in question "with others, had been fraudulently diverted from the purpose for which it was issued by Trautwine, Morton, and their agents." In short, Trautwine and Morton and their agents did not use the note in question in place of the original note, but disposed of it in some way in violation of the agreement made when it was issued. The note in question, with its indorsements, reads as follows:

"$2,500.                                    Watertown, N. Y., July 25, 1905.

Seal.
"Four months after date we promise to pay to the order of ourselves twenty-five hundred dollars at 395 Broadway, New York City.

"Value received.
"Due ......                              Hopper-Morgan Company,
                                            "Roger Morgan, Treasurer."

Indorsements.
    "Hopper-Morgan Co., by Roger Morgan, Treasurer."
    "Frederick M. Prescott."

One Frederick H. Babbitt was the treasurer of the claimant, Robertson Paper Company, and had general charge of its business. Some four or five years prior to the taking of this note in question by the Robertson Paper Company, that company had sold paper to the Hopper-Morgan Company in car load lots, but had not sold it any paper during the year preceding the purchase of same. In July, 1905, when Babbitt was purchasing an automobile from one F. M. Prescott in the city of Boston, Prescott inquired of Babbitt whether the paper of the Hopper-Morgan Company was good, and stated to Babbitt that he could sell an automobile to a man named Mugler if he (Prescott) would take a note of the Hopper-Morgan Company of Watertown, N. Y., in part payment. Babbitt told Prescott that he knew the Hopper-Morgan Company and considered its paper good. Subsequently, Harry Prescott, a brother and associate in business of F. M. Prescott, telephoned Babbitt inquiring if the Robertson Paper Company would be willing to take a note of the Hopper-Morgan Company signed by Roger Morgan as treasurer at the regular discount of 6 per cent. Babbitt telephoned the secretary of the Hopper-Morgan Company in relation to the matter, and was informed that Roger Morgan, the treasurer, had charge of all the financial affairs of the Hopper-Morgan Company, and suggested that Babbitt communicate with Morgan. Thereupon, on July 27, 1905, Babbitt, as general manager of the Robertson Paper Company, wrote Morgan, as treasurer of the Hopper-Morgan Company, as follows:

"We are offered in the way of trade notes to the value of $2,500, which we understand were given by the Hopper-Morgan Company, signed by Roger Morgan as treasurer, to H. H. Mugler of Boston, or if we are correctly informed in regard to this, said H. H. Mugler is now owner of said notes. Inasmuch as we have had very pleasant relations with your company in the past, we venture to ask you if these notes are all right. If the transaction is all straight so far as Mr. Mugler is concerned, and if you will kindly advise me as to. when these notes reach maturity. I feel that knowing us as you do in a business way, I am not asking for any information that it will not be perfectly acceptable for you to give. My only idea in this matter is that I am perfectly willing to take this commercial paper in the way of trade if there is nothing wrong about the transaction. Thanking you in advance for

the courtesy of a reply, for which we inclose stamped envelope herewith, we remain."

In reply, Morgan wrote Babbitt, as treasurer, as follows:

"Received your letter just as I was starting to take train for Springfield. In regard to notes which are in possession of H. H. Mugler, would say that I sent them to a man in whom I have every confidence for another purpose. He called me on telephone stating that he had this opportunity to make arrangement with Mr. Mugler, whom he states is a reliable person, for the use of notes. Mr. Mugler does not own them, but is free to use them as collateral, and I don't think you are running any risk in dealing with Mr. Mugler."

A day or two after the receipt of this letter, Babbitt notified F. M. Prescott that, if he still wished to negotiate the note, the Robertson Paper Company would take it. Shortly thereafter Prescott went to Mr. Babbitt at Plymouth, Mass., and there indorsed the note in question, and delivered it to Babbitt, and received therefor the check of Robertson Paper Company for $2,450, and which check was signed by Babbitt, as treasurer, and was duly paid on presentation at the Robertson Paper Company's bank.

It is conceded in the statement of facts, and agreed therein, that Babbitt never saw the note until Prescott delivered it to him, as above stated, and that Babbitt "had no notice of any defect or irregularity in the issue of title of the note, unless the letter from Mr. Morgan of July 28th, and above quoted from, constituted notice." Babbitt testified that the letter from Morgan, above quoted, aroused no suspicion in his mind of anything wrong; also, that he showed this letter to Prescott at the time he received the note from him; also, that when he delivered the check to Prescott in exchange for the note he had no knowledge of a defect of any kind in the title of the note or of any irregularity in its issue; and that he first learned of the irregular issue of the note about 60 days after the Robertson Paper Company became the owner of it. It does not expressly appear how, when, from whom, or upon what consideration Prescott received the note. It does not expressly appear that Prescott took same in good faith and for value.

It may be inferred that Prescott received the note from Mugler, above mentioned, in exchange and in part payment for an automobile. It is not stated as a fact that Prescott did sell an automobile to Mugler, or that Mugler delivered the note to Prescott, but I think this was the fair inference for Babbitt to draw, for Prescott had told Babbitt that he could sell Mugler an automobile if he would take a note of the Hopper-Morgan Company in part payment. It follows that when Babbitt took the note from Prescott he had some reason to believe that it was the same note which Prescott had suggested he could obtain in exchange for an automobile from Mugler. When Harry Prescott inquired of Babbitt if his company would be willing to take a Hopper-Morgan note, Babbitt wrote Morgan for information, and was informed by him that the note had been issued and delivered to some person for a different purpose, and that Mugler did not own the note and could only use it as collateral. It may be that Babbitt was justified in believing that Mugler had transferred the note to Prescott as collateral. If so, Babbitt knew that Prescott held the note as collateral merely, and that it was issued for a special purpose, and that its

use was limited to that of collateral only. He therefore knew that he was purchasing a note issued to be used as collateral of a person who held it for use as collateral merely. When he purchased the note, he therefore purchased the collateral without purchasing the debt it was held to secure.

When Babbitt purchased the note, he showed Morgan's letter to Prescott, of whom he purchased the note, but it does not appear that he inquired of Prescott, or received any information, as to how Prescott came by the note, other than it may be inferred that he assumed Prescott had received it from Mugler in exchange for an automobile. If so, then Babbitt had knowledge, when he took the note, that Prescott had received it in payment for an automobile from a person who did not own it and whose right to use it was limited to its use as collateral. It follows that Babbitt took the note from a purchaser from Mugler with full knowledge that Mugler had no title and could confer none, and with full knowledge that the note was to be used as collateral merely.

Under the agreed state of facts, I do not see how it is possible to hold that the claimant, Robertson Paper Company, is a holder of this note in good faith and for value. The claimant did not take this paper in the regular course of business. It was a seller of paper, and not engaged in the banking business. The note was not presented for discount in the regular course of business. It was purchased in a peculiar way, under peculiar circumstances, and with knowledge that the note had been issued for some particular purpose, not disclosed, but that Mugler, who had disposed of it to Prescott, from whom the claimant obtained it, was not the owner and had the right to use it as collateral merely. When a promissory note is out as collateral, and its use is limited in that way, it may pass from hand to hand as collateral, and it may be redeemed by the person parting with it for that purpose; but, when it is sold outright, the person given the right to use it as collateral parts with all control over it and can no longer redeem and return it to the maker or person issuing it before maturity. In this case, the note in question was to take the place of, and was issued under the same conditions as, the original notes, which were to be used as collateral merely for the accommodation of the Emerson Manufacturing Company, and taken up and returned to Morgan, who made them without authority before maturity and before they should become a charge upon the Hopper-Morgan Company. I think the referee was right in holding that the Robertson Paper Company was not a purchaser and holder of this note in good faith; that the claimant had such knowledge and information when it purchased the note that it is charged, and must be charged, with bad faith in taking the note.

The fact that Babbitt says the letter aroused no suspicion of anything wrong in his mind, and that when he took the note he had no knowledge of a defect of any kind in the title of the note, cannot change the facts. He knew, or had good reason to believe, that Prescott received the note from Mugler, and that Mugler had no right to sell it, and that the note could only be used as collateral, and that it was originally issued for a purpose other than to be used in part payment for property of any kind. Babbitt said in his letter of July 27th

156 F.—34

that the note was offered them in the way of trade, for property it is presumed, and was informed in reply, July 28th, that they had been sent to a man for another purpose, and that, while Mugler did not own them, he was at liberty to use them as collateral. It is quite true that the information in such a case as this must be such as will arouse more than a suspicion; but absolute knowledge of all the facts is not required.

Again, I do not think that a person who holds an accommodation note, with the right to use it as collateral merely, has the right to sell it outright, or that a person dealing with him with knowledge of the limited use to which the note could be put has the right to purchase same outright. If the purchaser of the note has actual knowledge of the infirmity in the note, or want of title in the one from whom he takes it, that, of course, ends the case. If he has no such actual knowledge, then bad faith or a willful disregard of known facts showing the infirmity or want of title or a willful evasion of knowledge of the facts will be sufficient to defeat recovery. Facts sufficient to create a suspicion of the truth are not sufficient to show knowledge or bad faith, nor is mere gross negligence in making inquiry, or in failing to make inquiry, alone, sufficient. There must be either actual knowledge or bad faith. Bad faith may be shown by a willful disregard of and refusal to learn the facts when available and at hand. Joyce, Defenses to Commercial Paper, § 475, p. 596; Goodman v. Simonds, 20 How. 343, 15 L. Ed. 934; Lytle v. Lansing, 147 U. S. 59, 71, 13 Sup. Ct. 254, 37 L. Ed. 78; Swift v. Smith, 102 U. S. 442–444, 26 L. Ed. 193; Brooklyn City & N. R. Co. v. National Bank of the Republic, 102 U. S. 14–38, 41, 26 L. Ed. 61; Shaw v. Nat. Bank of St. Louis, 101 U. S. 557, 564, 25 L. Ed. 892; Cromwell v. County of Sac, 94 U. S. 362, 24 L. Ed. 195; Commissioners of Marion County v. Clark, 94 U. S. 278, 286, 24 L. Ed. 59; Hotchkiss v. National Bank, 21 Wall. 354, 359, 22 L. Ed. 645.

A person about to take a negotiable promissory note cannot willfully shut his eyes to information or means of information or knowledge which he knows are at hand. He cannot willfully evade knowledge which he knows, or has reasonable cause to think, would show a defect in the note or want of title. He must act in good faith, not in bad faith. Circumstances may be such as to impose an active duty of inquiry and investigation, and, if such duty is not performed, it may be conclusive evidence of bad faith; that is, the law may charge the party with knowledge which was at hand, available, and to which he willfully shut his eyes; that is, he might have known the truth, ought to have known the truth, had good reason to suspect the truth, and did, but willfully refused to become fully acquainted with it. Hazlehurst v. The Lulu, 10 Wall. 192, 201, 19 L. Ed. 906; Doe v. Northwestern Coal & Transportation Co. (C. C.) 78 Fed. 62, 68; Atlas National Bank v. Holm, 71 Fed. 489, 491, 19 C. C. A. 94, affirmed in Holm v. Atlas National Bank, 84 Fed. 119, 28 C. C. A. 297.

In Hallock v. Young, 72 N. H. 416, 419, 420, 57 Atl. 236, 238, the court said:

"It was said, in the leading case on the subject in this country, that 'every one must conduct himself honestly in respect to the antecedent parties when

he takes negotiable paper, in order to acquire a title which will shield him against prior equities. While he is not obliged to make inquiries, he must not willfully shut his eyes to the means of knowledge which he knows are at hand, * * * for the reason that such conduct, whether equivalent to notice or not, would be plenary evidence of bad faith.' "

In Raphael v. The Bank of England, 17 Common Bench, cited by the claimant, Willes, J., cites with approval and quotes Parke, J., in May v. Chapman, 16 M. & W. 355, viz.:

"Notice and knowledge mean not merely express notice, but knowledge or the means of knowledge to which the party willfully shuts his eyes—a suspicion in the mind of a party—and the means of knowledge in his power willfully disregarded."

If the party in good faith makes inquiry pursuant to his suspicion, when it is his duty so to do, and is even grossly negligent in so doing, if his failure be negligence only, however gross, he cannot be charged with knowledge or bad faith, but if he willfully fails to gain the information when it is at hand, and when it is his duty so to do, then he shows bad faith, for it is a willful evasion of knowledge for a purpose and which he ought to obtain.

In this case, it is conceded that the note in question was void and nonenforceable against Hopper-Morgan Company except in the hands of a bona fide holder in good faith and for value. It was issued for a special purpose, and its use limited. It was issued without consideration and without authority from the company. When the Robertson Paper Company presented its claim with the note attached, and showed that it took same before due, as the note is fair on its face, the presumption attached that it was executed and delivered to Prescott; he being first indorser after Hopper-Morgan Company, the payee, for value, and that he received it in good faith. The presumption was also that the Robertson Paper Company was a holder of the note in good faith and for value.

We will assume that it became incumbent upon the trustee in bankruptcy to show that the note was illegal in its inception, issued without consideration or authority, and that the Robertson Paper Company was not a holder for value, or, if so, was not a holder in good faith. Starting with this assumption, what actual or express information did the Robertson Paper Company have as to the infirmity of the note? It is conceded that the company paid value. The claimant company had express information, in accordance with the fact, that the note was delivered to a man not named for a purpose other than to be used in the trade and for the payment of property purchased. The note has been offered in the way of trade, wrote Babbitt, and he adds, in substance, that he understands that it was delivered originally to Mugler, or, at least, that Mugler is the owner of the note. Prescott had also informed Babbitt that he could get the note of one Mugler in exchange for an automobile. The conceded facts show that Babbitt knew the note was in the hands of Mugler, and that he was proposing to transfer it to Prescott in part payment for an automobile. Babbitt is informed by the treasurer of the bankrupt, the person who made the note, that Mugler does not own the note, but is at liberty to use it as collateral. The claimant therefore had actual knowledge that the note was not

issued to be sold; that the holder at that time had no right to use it except as collateral, therefore that Prescott had no right to take it in part payment for property sold; that if he did so take it, with knowledge of the facts, he would not obtain title or the right to sell the same to any person. Babbitt had some reason to think that Prescott had purchased the note in good faith and for value. In face of the facts which he did know and which have just been recited, it was his duty to inquire, and he could easily have learned, the exact purpose for which the note was issued, and whether or not it was issued by authority and for a consideration; in short, whether or not it had a legal inception; also, how Prescott came by it. The claimant company made no further inquiry. Nor was it necessary, in my judgment, except as to Prescott's ownership, for the reason that the information already given to Babbitt informed him that the note could only be used as collateral by Mugler, and that Mugler had parted with it outright not being the owner, and that Prescott, who offered the note to the claimant, had in fact obtained no title. Prescott saw the letter from Morgan to Babbitt before parting with the note to the claimant company. So far as appears, he gave no information to Babbitt as to how he came by the note, and Babbitt made no inquiry, assuming, we will presume, that Prescott had taken it in part payment for an automobile.

It may be regarded as settled law in the state of New York that if Prescott took the note from Mugler in good faith, and in part payment for an automobile, he could give good title to the claimant company, for, if such were the facts, then Prescott could have enforced the note against the maker. If so, he could transfer the note, and all the rights to enforce same which he had, to a third person, even if that third person had obtained knowledge of the illegal inception of the note.

Do the conceded facts in this case show by fair inference that Prescott had become the owner of the note when he parted with it to Babbitt? Possession by Prescott was evidence of ownership. There is no direct evidence that Prescott had any notice whatever of any infirmity in this note when he took it from Mugler, if he did take it from him, or, if he did not, when he took it from some other person. In short, there is no direct affirmative evidence that Prescott was not a holder in good faith and for value. This note was not obtained from the Hopper-Morgan Company by duress, but it was, in my judgment, obtained by fraud. The company never authorized the issue and delivery of the note for any purpose. Morgan, its treasurer, issued it without authority, in violation of his duty, and in so doing committed a fraud upon the company itself, which in fact did not know the notes were made or issued. It was not made or issued in the business of the company. For this reason I am of the opinion that, when the trustee had shown the illegal inception of the note and the circumstances under which it was issued and the fraudulent diversion, the burden was thrown on the claimant company to show that it took the note for value and in good faith. It has failed to show that it took the note in good faith. In fact, bad faith is shown. Failing in this, the burden was on the claimant company to show that it took the note from one who held the same in good faith and for value. The claimant company has not shown affirmatively that Prescott took the note from Mugler or some other

person in good faith and for value. The evidence fails to show affirmatively and directly that Prescott was a holder of the note either without consideration or in bad faith, but I think the burden was upon the claimant company to show affirmatively that Prescott purchased the note for value and in good faith from some one; that the statement, in the statement of facts, that Prescott informed Babbitt that he could sell an automobile to Mugler in exchange for the note of Hopper-Morgan Company, and the further fact that subsequently Prescott had possession of the note, is insufficient to show that Prescott purchased the note from Mugler or any other person in good faith and for value, in part payment for an automobile, or otherwise.

It is not necessary to go extensively into the authorities, as they are collated in the case In re Hopper Morgan Co. (D. C.) 154 Fed. at pages 261 and 257. In First National Bank v. Green, 43 N. Y. 298, Rapallo, J., said:

"A plaintiff, suing upon a negotiable note or bill purchased before maturity, is presumed, in the first instance, to be a bona fide holder. But when the maker has shown that the note was obtained from him under duress, or that he was defrauded of it, the plaintiff will then be required to show under what circumstances and for what value he became the holder. 2 Greenl. Ev. § 172; McClintick v. Cummins, 2 McLean, 98, Fed. Cas. No. 8,698; Munroe v. Cooper, 5 Pick. (Mass.) 412; Holme v. Karsper, 5 Bin. (Pa.) 469; Vallett v. Parker, 6 Wend. (N. Y.) 615; 1 Camp. 100; 2 Camp. 574; Case v. Mechanics' Banking Ass'n, 4 N. Y. 166. The reason for this rule, given in the later English cases, is that: 'Where there is fraud, the presumption is that he who is guilty will part with the note for the purpose of enabling some third party to recover upon it, and such presumption operates against the holder, and it devolves upon him to show that he gave value for it.' Bailey v. Bidwell, 13 Mees. & W. 73, approved in Smith v. Braine, 3 Eng. L. & Eq. 379, and in Harvey v. Towers, 4 Eng. L. & Eq. 531."

This case has been repeatedly recited and approved. See Vosburgh v. Diefendorf, 119 N. Y. 365, 23 N. E. 801, 16 Am. St. Rep. 836.

The fraud is imputed to and affected Prescott, unless it is shown that he took in good faith. On the whole case, and in every view of it, I am satisfied that the referee arrived at the correct conclusion and was right in rejecting the claim presented by the Robertson Paper Company upon this note.

The order rejecting the claim is therefore affirmed.