Rosenplanter *v.* Toof.

ROSENPLANTER *v.* TOOF.

*(Jackson.*    May 19, 1897.)

1. BILLS AND NOTES. *Estoppel to deny indorsement.*

The acceptance, though made without full knowledge of all the facts, by the purchaser named therein, of an absolute bill of sale, reciting that by its acceptance he assumes absolutely the payment of specified notes of the seller on which the former's name appears as indorser, coupled with the failure of the purchaser to promptly repudiate the same after learning all the facts, and after attachment of the property conveyed therein by creditors of the seller, estops such purchaser to claim as against the holder of one of such notes that he did not indorse the same, although the indorsement of his name was forged by the seller. *(Post, pp. 93–103.)*

Cases cited and approved: Fitzpatrick *v.* School Com'rs, 7 Hum., 224; Jones *v.* Hamlett, 2 Sneed, 261; Moore *v.* Stovall, 2 Lea, 543.

2. CONTRACT. *Acceptance.*

And it is conclusively presumed that the purchaser's acceptance of the bill of sale was upon the terms and conditions therein specified. Benefits and correlative burdens stand together. *(Post, pp. 100, 101.)*

Case cited and approved: Moore *v.* Stovall, 2 Lea, 543.

3. SAME. *Release.*

And the purchaser's obligation to pay the notes assumed is not affected by the loss of the property by superior claim attaching after the making of the bill of sale. *(Post, p. 102.)*

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. STERLING PIERSON, Ch.

Rosenplanter *v.* Toof.

W. D. WILKERSON for Rosenplanter.

W. G. WEATHERFORD and SMITH & TREZEVANT for Taylor.

J. R. FLIPPIN and GANTT & PATTERSON for Toof.

WILKES, J. These two suits involve the same question of liability upon the part of S. C. Toof, the first mentioned being a bill to enjoin the second, which was to recover against S. C. Toof upon his indorsement of a note for $3,000, made by A. K. Ward. The Chancellor, upon hearing the causes in the Court below, gave judgment in favor of complainant, Rosenplanter, against Toof, upon his indorsement, and, on demurrer, dismissed the bill to enjoin the prosecution of that suit. Mr. Toof has appealed to this Court, and assigned errors.

The facts, so far as necessary to be stated, are that A. K. Ward, who is the son-in-law of Mr. Toof, executed an instrument conveying to him all his personal property on his Sledge plantation, in Bolivar County, Mississippi, consisting of stock, farming implements, provender, cotton gathered and ungathered, and a small stock of merchandise. The instrument of transfer is in the words and figures following:

"A. K. WARD
    *To*          } Bill of Sale.       STATE OF TENNESSEE,
S. C. TOOF.                                  *Shelby County.*

"For and in consideration of the sum of $21,700, to be paid for me by S. C. Toof, of Memphis,

Tenn., as follows, to wit: The sum of $10,000, when due, which is evidenced by my certain promissory note, dated June 20, 1895, and payable twelve months after date thereof to the order of myself, and upon which said note the said S. C. Toof is an indorser; the further sum of $3,200, when due, which is evidenced by my certain promissory note, dated September 18, 1895, payable ninety days after date thereof, to the order of J. L. Wellford and W. H. Bates; the further sum of $3,200, which is owing by me, by open account, to the firm of W. F. Taylor & Co., of Memphis, Tenn., under my firm name of R. T. Harwood & Co., I being the sole and only member of said firm of R. T. Harwood & Co.; also the further sum, when due, of $3,000, evidenced by my note, dated October 22, 1894, due and payable twelve months after date thereof, to the order of said S. C. Toof and W. F. Taylor, and by them indorsed; also the further sum of $1,000, due by me, by open account, to the firm of Hill, Fontaine & Co., under my said firm name of R. T. Harwood & Co.; also the further sum, when due, of $1,300, evidenced by the note of J. H. Petway & Co., of which firm I am the surviving member, dated in December, 1892, due and payable three years after date thereof, to the order of W. M. Sledge, and now held by M. E. Embry.

"The said S. C. Toof, by the acceptance of this bill of sale or conveyance, hereby assumes absolutely to me the payment of all of the above mentioned

Rosenplanter *v.* Toof.

indebtedness, when due, and those of said notes upon which he is now liable as indorser; that he will pay and discharge the same at their maturity; and this bill of sale is to be in full satisfaction to him for such payments.

"In consideration of the above, I do hereby bargain, sell, transfer, and convey and deliver the possession, unto the said S. C. Toof, of the following described personal property, to wit: All of the ungathered crops of cotton and corn, and other agricultural products, now on what is known as the Wm. Sledge Plantation, in Bolivar County, Mississippi, and cultivated by me during the present year (1895), under the firm name of R. T. Harwood & Co., I being the sole and only member of said firm, and sole owner of said property; also, all of the horses and mules now on said plantation, or belonging thereon, estimated to be seventy-five head in all; also, all of the agricultural implements and gearing now on said plantation, or belonging thereto; also, two carriages and one buggy now on said plantation; also, about one hundred and fifty head of hogs now on said plantation, or in the range adjoining same; also, about fifty tons of hay on said plantation, and twenty-five tons of sorghum cane.

"The above description of the above mentioned property is to include all the property of the above description now on said plantation, or belonging thereto, in which I have any interest whatever,

though the amount thereof may be less or exceed the amount above stated.

"Also the entire stock of merchandise, store fixtures, of whatever kind or nature, now in the storehouse kept by me, under the firm name of R. T. Harwood & Co., on said plantation; also, all of the household and kitchen furniture now belonging to me, or in which I have any interest, in the dwelling house, or at other places, on said plantation; also, all of the wagons and harness now on said plantation, and belonging to me, or in which I have any interest; also, all of the books of accounts and claims, or choses in action, of whatever kind or nature, held or owned by me against any tenants, sharehands, or croppers on said plantation, and this to include all notes, mortgages, and other evidence of said indebtedness; also, all cotton gathered from the crops of 1895, and now on said plantation, and all cottonseed therefrom, including all of said cotton and seed which are now in transit from said plantation; also, all corn which may be now gathered from the crop of 1895, and now on said plantation. To have and to hold all of said property unto him, the said S. C. Toof, his heirs and assigns, forever in fee simple.

"Witness all of which, I have signed my name this the fifteenth day of October, 1895.

> "A. K. WARD.
> "R. T. HARWOOD & Co.
> "By A. K. WARD."

Rosenplanter *v.* Toof.

"State of Tennessee, )
    "*Shelby County.*   }

"Personally appeared before me, Butler Jack, a Notary Public in and for said State and County, at Memphis, duly commissioned and qualified, A. K. Ward, the within named bargainor, with whom I am personally acquainted, and who acknowledged that he executed the within named instrument, for the purposes therein named.

"Witness my hand and notarial seal, at Memphis, aforesaid, this fifteenth day of October, 1895.

"[L. S.]   Butler Jack, *Notary Public.*"

"Filed for record, October 16, 1895, at 2 o'clock and 40 minutes, P.M., and truly recorded October 17, 1895.        "T. R. McGuire, *Clerk.*

"W. A. Shelby, *D. C.*"

It appears that Ward had been guilty of many irregularities in the conduct of his affairs, and, when the instrument was executed, was on the eve of fleeing the country. It appears that Mr. Toof had some knowledge of Ward's irregularities, in a general way, but it does not appear that he was cognizant of the fact that he was preparing to leave, and he had no knowledge of this instrument until the evening of October 16, 1895, the day after its execution and registration, and it then came to his hearing not directly but incidentally. He took counsel of his legal adviser as to the course to pursue, but had not, as yet, seen the transfer nor a copy of it, and did not fully know its contents. As a result of his

15 P—7

deliberations, and the advice received by counsel, he dispatched an agent, J. R. Taylor, to the premises, with power of attorney, to take charge of the property in his name, and to gather the crops and dispose of the same. Taylor took possession on the seventeenth, receiving the same from Brewer, the agent of Ward. He at once shipped sixty bales of cotton, as the property of Toof, to factors in Memphis, to be sold for his account.

A certified copy of the instrument came to the hands of Mr. Toof October 19, at 8 P.M. On the twenty-first he received the original. On the latter day the property was attached by proceedings in the Courts of Mississippi, for debts of Ward. It appears, also, that an attachment at law was made on the nineteenth, and an attachment bill in equity was filed October 24, to reach the ungathered crops.

On the eighteenth of October the flight of Ward became public, and it was reported that he had left behind two hundred to three hundred thousand dollars of forged indorsements, largely involving Mr. Toof and other friends. The result of his transactions had made him hopelessly insolvent. Being notified of the attachments served, Mr. Toof, on October 21, intervened in the Mississippi suits, claiming the property under the instrument. This was also done on the advice of counsel. On October 31 a receiver was appointed. The result was the realization of some $8,000 of money, besides the $2,200 received from the sixty bales of cotton. Appellant plead *non est*

*factum* as to the indorsement, which was replied to, and it was further insisted that if the indorsement was originally a forgery, it had been ratified by Toof's acceptance under the instrument.

The attachment suits in Mississippi were prosecuted to a hearing, and resulted adversely to Mr. Toof, but, on appeal to the Supreme Court, the holding of the Court below was reversed, and the causes remanded, and are now pending, undetermined, in the Court below.

The real controversy in these causes comes down to very narrow limits, the contention upon the part of Mrs. Rosenplanter being that Mr. Toof is bound as indorser, and, even if not originally bound as such indorser, he is under the terms of the instrument, which she construes to be an absolute sale of the property, and its acceptance an absolute undertaking and promise to pay the debts therein specified. For Mr. Toof it is insisted that the instrument must be construed, in the light of all the surrounding circumstances, to be but a mortgage to secure the debts therein specified, and the promise to pay to be to the extent only of the assets received under the instrument; that the literalism of the instrument must give way to the real intention of Mr. Toof in accepting it, and that the Court must look through the mere words of the instrument to all the circumstances, and ascertain the real object in its acceptance. It is also insisted that, whatever the Court may hold as to these main features of the

case, still the enforcement of the note should be delayed until the Mississippi litigation is finally settled, and, if successful, its fruits applied to the *pro tanto* extinguishment of the debt, and, if unsuccessful, then that Toof should be relieved, on the ground of a total failure of the consideration of said instrument.

While there are a number of assignments of error made, they are all embraced in the general statement herein made, and they need not be specially set out.

Looking alone to the instrument, we think it can have but one construction, and that is, that it is in form and substance an absolute bill of sale, and so intended, and, if accepted, it must have been according to its terms and provisions; also, that the promise to pay the debts was in no way conditioned upon the amount that might be realized out of the property, but was absolute and unconditional, and, as expressed in said instrument, the property was to "vest in said J. C. Toof, his heirs and assigns, forever, in fee simple," and there was and is no language imputing, or any way fixing, a trust upon the property conveyed. *Powell* v. *Kelly*, 3 L. R. A., 14; *Moore* v. *Stovall*, 2 Lea, 543.

While this is the plain language of the instrument, and the unavoidable legal construction of it, we think that the evidence taken in the suits in Mississippi, which is incorporated into the record in this case, as well as the other testimony in the case, is scarcely less conclusive and convincing. There can

be no doubt but that Ward intended the conveyance to be absolute. If accepted at all, it must have been upon the terms tendered and none other. 3 Am. & Eng. Enc. L., p. 852.

Mr. Toof himself says, "My acceptance was without condition." And, again, "I never, at any time, revoked my acceptance of the instrument." It clearly appears that he took immediate possession. His attorney, Hon. Jno. R. Flippin, states that "Mr. Toof accepted the conveyance on the sixteenth day of October, 1895, and it was without any condition or reservation in the world." Again, Mr. Toof says, "I accepted on the sixteenth of October, unconditionally and without any reservation," and took immediate possession, and that he never did revoke his acceptance. This testimony was given in the Mississippi suits, where the contest was sharply drawn whether Mr. Toof had accepted the conveyance before the attachments were filed.

Indeed, it can hardly be said that there is any denial of this fact even in the argument, but this contention is, that while the acceptance was made as stated, still it was for the benefit of Mr. Toof, and all other persons interested in it, and that, having taken charge of the property while he had only an imperfect knowledge of what the instrument contained, he could not afterward surrender it without liability, nor was he required to do so, as he might hold it so as to realize from it his proportion of its net results when administered. But while this theory is

ingeniously and earnestly pressed upon us, we cannot see that it is tenable. As before stated, the instrument must be accepted, if at all, according to its terms, and they cannot be construed into anything else but an absolute transfer, and, in consideration thereof, an absolute promise to pay the debts specified and assumed. And, under the proof in the case, the conclusion is irresistible that Mr. Toof, before the attachments were filed, knew of the contents and recitals of the instrument, that it was absolute and his promise to pay unconditional, and also knew that his status was that of an indorser upon the note. The fact that the property may be taken from him by superior claim, attaching after his own rights vested, if such should be the case, cannot alter the conclusion which we reach.

If, when these facts came to his knowledge, he did not desire to confirm the sale, and ratify his indorsement, he should have promptly repudiated both and left the parties to their remedies. He cannot take benefit under the instrument without assuming its burdens, nor can he accept it in such manner as to alter and change the plain meaning of its terms. And this rule holds good as well in case of forged indorsement as in other cases. *Fitzpatrick* v. *School Commissioners*, 7 Hum., 224; *Jones* v. *Hamlett*, 2 Sneed, 261.

It is evident that when Mr. Toof accepted the benefits of the instrument, he was of the impression the property was worth even more than the amount

Rosenplanter *v.* Toof.

of debts assumed by him. He stated that he estimated its value at $30,000, while the aggregate of the debts assumed. was only $21,700. It, however, sold for less than his estimate.

Looking to the record, as it is presented to us, we are of the opinion that the defendant, Toof, by accepting the provisions of the bill of sale, with its recitals, has estopped himself from denying or avoiding his indorsement, and has fully committed and bound himself to pay the debts specified in it as the consideration of the transfer. If in the contest with creditors, who are litigating with him in Mississippi, he shall prove to be unsuccessful, while it will entail a hardship upon him, we cannot see that it can be any defense against complainant, nor, in the view we have taken of the instrument as an absolute bill of sale and not a pledge, pawn, or chattel mortgage, can we see any ground upon which he can delay the payment of the indorsement and amount assumed.

The decree of the Court below is affirmed with costs.