D. M. ROBBINS v. SWINBURNE PRINTING COMPANY and Others.[1]

February 11, 1904.

Nos. 13,754—(205).

**Burden of Proof.**

As against the maker of a promissory note fraudulently put into circulation the burden of proof is upon the indorsee to show that he is a bona fide holder for value, without notice.

**Notice of Fraud.**

Such indorsee's title is not held bona fide where he has actual or constructive notice of facts such as to subject him to the imputation of fraud or bad faith in the transaction. Merchants Nat. Bank v. McNeir, 51 Minn. 123.

**Evidence.**

The evidence supports the finding of the trial court that appellant's predecessor was not a bona fide indorsee in good faith, without notice.

Action in the district court for Wright county by D. M. Robbins, substituted for the Bank of Minneapolis, plaintiff, to recover from defendants, as makers and indorsers thereof, $603.56 and interest upon a promissory note. Defendants Walter Frantzen and Joseph H. Whitney alone appeared and answered. The case was tried before Giddings, J., who found in favor of defendants. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Fred W. Reed,* for appellant.

*J. H. Wendell* and *James C. Tarbox,* for respondents.

[1] Reported in 98 N. W. 331, 867.

LEWIS, J.

In point of time, the essential features of the case, as found by the trial court, are: September 29, 1894, the $600 note in suit, due March, 1895, was executed and delivered to the Central Publishing Company. October 11 the Central Publishing Company dissolved partnership, Masterman retiring from the firm. October 18 the note was paid by agreement to cancel it and take back the maps and gazetteers. November 21 the note being in Masterman's possession as a member of the firm, demand was made upon him for its surrender. November 26 the note was transferred to the Swinburne Printing Company by Masterman, acting as a member of the Central Publishing Company, and transferred to the bank for account of the Swinburne Printing Company by Masterman, treasurer and manager. The court further found that the bank had notice of the fact that Masterman was acting both as agent and member of the Central Publishing Company and as treasurer and manager of the Swinburne Printing Company, and had knowledge sufficient to put it upon inquiry, which, if pursued, would have disclosed the fact that Masterman had no authority to make such transfers and indorsements. The court also found that the bank did not take and receive the note in good faith. If these facts are sustained by the evidence, the order appealed from must be sustained, unless there was error in the rulings of the court respecting the reception of evidence.

Although the evidence is somewhat conflicting as to the time the $600 note was indorsed to the Swinburne Printing Company, and by it indorsed to the bank, the findings of the court are undoubtedly sustained. It then appears that the Swinburne Printing Company never acquired any title or interest in the $600 note, and that Masterman simply had it in his possession as a member of the Central Publishing Company, which firm was dissolved; and, after being notified that it was paid, and demand made upon him for it, he could confer no title in the note by indorsing and transferring it to the Swinburne Printing Company, of which he was treasurer and manager.

We will concede that the bank might acquire a valid title to the note, even as a second pledgee, if it took the same without notice of the fact that the firm had been dissolved and the note paid, or without knowledge sufficient to put it upon inquiry.

All the business on the part of the bank with the Swinburne Printing Company was transacted by its cashier, and his testimony was very indefinite as to the time he received the note, but he admitted that it was taken simply as collateral to the indebtedness of the Swinburne Printing Company. It was positively testified to by defendants that at the time of the dissolution of the Central Publishing Company, October 11, 1894, Masterman was present, and exhibited the note, upon which at that time there were no indorsements. This, taken in consideration with the facts that the cashier knew Masterman was a member of the Central Publishing Company, and that he was at the same time general manager and treasurer of the Swinburne Printing Company; that Wright refused to take the note in payment, but agreed to take it as collateral, after inquiry concerning it and the indorsers, and the financial condition of the several institutions—was sufficient to warrant the court in finding as a matter of fact that the note was not indorsed and transferred by Masterman until it had actually been paid, and that the bank could easily have ascertained the true conditions if it had made any inquiry from the parties interested; and that it was not acquired in good faith within the rule applied in Merchants Nat. Bank v. McNeir, 51 Minn. 123, 53 N. W. 178; Rosemond v. Graham, 54 Minn. 323, 56 N. W. 38; Gale v. Birmingham, 64 Minn. 555, 67 N. W. 659.

When it is shown that a note has its inception in fraud, the burden of proof shifts to the indorsee to show that he came into possession of it for a valuable consideration and without notice. Bank of Montreal v. Richter, 55 Minn. 362, 57 N. W. 61; First Nat. Bank of Decorah v. Holan, 63 Minn. 525, 65 N. W. 952; Daniel, Neg. Inst. (5th Ed.) § 815.

We do not find any reversible errors in the other rulings.

Order affirmed.


On March 26, 1904, the following opinion was filed:

PER CURIAM.

In the statement of facts in the opinion, it was stated that the note in suit was transferred to the Swinburne Printing Company by Masterman, acting as a member of the Central Publishing Company, on November 26; and it was further stated that the Swinburne Printing

Company never acquired any title or interest in the note, but that Masterman had it in his possession as a member of the Central Publishing Company, and, after being notified that it was paid and demand made upon him for it, he transferred it to the Swinburne Printing Company. This statement is incorrect, for it appears from the evidence that the printing company held the note as collateral security for the debt of the publishing company. There was evidence that Masterman had the note in his possession on or about November 13, after it had been paid, and the only indefinite question not settled by the findings. of the court and the evidence is, when was the note transferred by Masterman, for the Swinburne Printing Company, to the bank? It was some time between November 13 and November 26.

The misstatement as to facts in the opinion should not change the result, for the reason that the court found that the note was transferred to the bank by Masterman without authority, and while he was wrongfully in possession of the same. For this reason, the note was fraudulently put into circulation by Masterman, and, when that fact appeared, the duty was cast upon the plaintiff to prove that it acquired title to the same in good faith and without notice. In other respects we abide by the former decision.

Petition for reargument denied.