STATE BANK OF INDIANA v. WILLIAM COOK, Appellant.

125   111'
125   109

125   111
132   407

**Corporations:** STOCK SUBSCRIPTIONS: FAILURE OF CONSIDERATION: 1 EVIDENCE. Where there was an agreement between incorporators and subscribers to stock in a corporation yet to be formed, that the subscriptions to stock should not be binding until the full amount had been subscribed, evidence tending to show that one of the necessary subscriptions was not genuine, and that there was a private agreement that another should not be paid in full, was sufficient to take the issue of a failure of consideration for notes given to pay for stock, to the jury.

**Subscriptions to stock:** FRAUD. Where the subscription of an influ-2 ential person to the stock of a corporation yet to be formed, was used as an inducement to others to subscribe, and the same was relied upon as being genuine, when in fact such subscriber by a secret agreement was not to pay full price, it amounted to fraud. Evidence considered and held sufficient to require a submission of the issue of fraud to the jury.

**Subscription to stock:** COLLATERAL AGREEMENT. A collateral agree-3 ment with a subscriber to stock that his subscription should not be collectible except from dividends on the stock, is valid as between the parties and a complete defense to a suit on notes given for the amount of the subscription.

**Bills and notes:** BONA FIDE HOLDER: EVIDENCE. In an action on 4 promissory notes given by a subscriber to stock in a corporation yet to be formed, the evidence is reviewed and held to show that the officers of plaintiff were chargeable with notice of any agreement made or fraud perpetrated by the agents of the promoters of the corporation, at the time it accepted the notes as collateral security.

**Bills and notes:** BURDEN OF PROOF. In a suit on promissory notes, the 5 burden was on defendant to show that plaintiff's officers had knowledge, at the time the notes were taken, of an agreement affecting their payment and transfer; but as to want of considera-tion and fraud in procuring the same, the burden was on plaintiff to show that its officers had no knowledge of these defenses.

*Appeal from Linn District Court.—*HON. H. M. REMLEY, Judge.

SATURDAY, JUNE 11, 1904.

ACTION on two promissory notes, for $250 each, alleged to have been executed by defendant to the Iowa Hedge & Wire Fence Company, and by that company sold and assigned to plaintiff, and without recourse. The defenses interposed were that the notes were executed without consideration, and were procured by fraud. On plaintiff's motion, there was a directed verdict in its favor. From judgment on such verdict, defendant appeals.— *Reversed.*

*F. L. Anderson* and *Heins & Heins,* for appellant.

*W. L. Crissman,* for appellee.

McCLAIN, J.— The general history of the transaction connected with the execution of these notes is detailed in the cases of *State Bank of Indiana v. Gates,* 114 Iowa, 323, and *State Bank of Indiana v. Mentzer,* 125 Iowa, 101, and they need not be here repeated; but the issues are somewhat different, and the evidence is not the same. It will therefore be necessary to give this case an independent consideration.

The defendant, with others, was a subscriber to stock in the Cedar Valley Hedge Fence Company, an Iowa corporation, which was to be organized by the Iowa Hedge & Wire Fence Company, an Indiana corporation, and the notes were given to the latter in payment for the stock thus agreed to be issued. It is practically conceded that while the Cedar Valley Company was actually organized, and its stock issued as agreed, and that defendant received the amount thereof for which he had subscribed, such stock was valueless, and therefore, without returning it, defendant may plead and prove, if he can, that the notes given by him were procured by fraud and without consideration; and, if there is evidence tending to establish these allegations, the burden of proof is on the plaintiff to show that it was a purchaser for value,

and without notice of fraud or want of consideration.   There
are therefore two quesions to be considered: First, was there
evidence to go to the jury of fraud and want of considera-
tion? And, second, did the plaintiff establish want of notice
of the defenses to the notes by evidence so conclusive that
no question on that point was left for the jury to consider?
It is conceded that the plaintiff took the notes for value
before maturity, and holds them as collateral for indebted-
ness due to it from the Iowa Hedge & Wire Fence Com-
pany.

It is contended for defendant that there was evidence
to go to the jury tending to establish a defense in three re-
spects:   First, that the terms of the contract of subscription
were never complied with, and that the notes were therefore
without consideration; second, that defendant was induced
to subscribe by a false and fraudulent representation that
one Hamilton was investing $1,000 as a subscriber, whereas
in fact there was a secret agreement between the representa-
tives of the Iowa Hedge & Wire Fence Company and said
Hamilton by which he was to actually invest but one-half
of the amount for which he purported to be a subscriber;
and, third, that there was a collateral written agreement be-
tween the representatives of the Iowa Hedge & Wire Fence
Company and the defendant that the notes in suit should not
be transferred, and that defendant should not be required to
pay them in money, but that they should be paid by divi-
dends on the stock to be received by him in the Cedar Val-
ley Company.

The subscription which defendant signed, agreeing to
take $500 in stock in the Cedar Valley Company, at the
rate of one-half of its par value, in consideration for which
1. STOCK SUB-   these notes were given, was a somewhat elabo-
SCRIPTIONS:
failure of    rate instrument.   We need not set it out in
consideration;
evidence.    full, but it is enough to say that it provides
for the incorporation by the Iowa Hedge & Wire Fence
Company of the Cedar Valley Company, and the delivery

of stock in the latter company to the subscribers when certain conditions should be complied with by the Iowa Hedge & Wire Fence Company, some of which are that the notes executed by the subscribers shall not be turned over to the Iowa Hedge & Wire Fence Company or its representatives by Hamilton, who, as trustee, was to receive them from the subscribers, until the full amount of the stock of the Cedar Valley Company shall have been subscribed for at fifty per cent. of its face value, and that the subscriptions shall not be binding until the amount of stock thus specified shall have been fully subscribed for. It appears that, of the $20,000 required by this agreement to be subscribed in cash, said Hamilton was a subscriber to the extent of $1,000, and one Plummer to the extent of $2,500. Now, the evidence tended to show that the subscription by Plummer was not genuine, and that there was a private agreement with Hamilton by which he was in fact obligated to the extent only of $500. These subscriptions were necessary to make the total of $20,000 required to be subscribed before the subscriptions should be binding. We think, therefore, that there was evidence on which the jury could have found, had the question been submitted to them, that the subscription contract had not been carried out by the Iowa Hedge & Wire Fence Company at the time the notes were transferred by it to plaintiff, and that such contract has never been carried out. This was not a mere subscription for stock in an independent, existing corporation, but a subscription to an arrangement by which the Cedar Valley Company was to be incorporated. If the Iowa Hedge & Wire Fence Company did not comply with its agreement as to securing $20,000 bona fide subscriptions for stock in the Cedar Valley Company, which was to be incorporated, then the whole plan failed, and defendant's notes were without consideration. It is immaterial whether the notes were actually placed in the hands of Hamilton as trustee, or whether they were delivered at the time of the subscription to the repre-

sentatives of the Iowa Hedge & Wire Fence Company, for it was expressly agreed that, until the full amount of stock in the Cedar Valley Company should be subscribed, the several subscriptions should not be binding. We reach the conclusion, therefore, that there was some evidence showing want of consideration for the notes.

As to the fraudulent representation that Hamilton was investing $1,000 in the enterprise, whereas in fact the private agreement with him was that he should only be held 2. SUBSCRIPTION for $500, it may be said that, if the different TO STOCK: fraud. subscribers were independent purchasers from the Iowa Hedge & Wire Fence Company of stock in an existing and independent corporation, then perhaps it would be wholly immaterial how much Hamilton was to pay for the stock subscribed for by him; but it appears that the subscription by Hamilton was used as an inducement to secure subscriptions by the others, and that defendant relied upon Hamilton's subscription as being genuine and bona fide in making his own subscription, and there is also evidence tending to show that it was a part of the scheme on the part of the representatives of the Iowa Hedge & Wire Fence Company to secure a prominent man of influence and reputation to head their subscription, and offer him, as an inducement, stock at a much lower rate than that at which it was sold to others, concealing the fact from other subscribers, and leading them to believe that the person thus selected to head the subscription list was a bona fide investor of the amount set opposite his name. We have no doubt that such a representation may constitute fraud justifying the rescission of the contract on the part of the other subscribers. *Coles v. Kennedy,* 81 Iowa, 360. It is to be borne in mind that the subscription contract expressly specified that the requisite amount of stock must be subscribed for at not less than fifty per cent. of its face value, whereas, according to the evidence, Hamilton was to pay for his stock at one-fourth of its face value. We think the jury would have

been justified in finding that the representation amounted to fraud, and that defendant, relying thereon, was warranted in rescinding the contract on that account.

The collateral written agreement given to the defendant, signed by the Iowa Hedge & Wire Fence 'Company by a person acting as its representative in procuring the subscription of defendant, and accepting the notes executed by him in pursuance of such subscription, was certainly binding on the Iowa Hedge & Wire Fence Company. We see no reason why such a collateral agreement may not be effectual as between the parties, and this agreement, if made, would relieve the defendant from the obligation to return his stock and demand the surrender of his notes when he discovered that the contract had not been fully performed on the part of the Iowa Hedge & Wire Fence Company, for he might well be willing to hold his stock under that condition, although unwilling to be bound unconditionally to pay therefor. Such an agreement, in our judgment, if established — and there was evidence tending to establish it, for the written instrument was introduced in evidence — would constitute, as between the parties, a full defense to an action on the notes. In short, there was evidence of fraud and want of consideration on which the jury could have found that, as between the Iowa Hedge & Wire Fence Company and defendant, the notes were not valid as obligations to pay the amounts named therein.

*3. SUBSCRIPTION TO STOCK: collateral agreement.*

The evidence tended to show that at the time the plan was made by the Iowa Hedge & Wire Fence Company to send its representative into Iowa to organize an independent corporation, to be known as the Cedar Valley Hedge Fence Company, the president of the plaintiff bank was president of the fence company, and other directors of the bank and members of its discount committee were either directors or stockholders in the fence company; that, before the fence company came to Iowa, it was

*4. BILLS AND NOTES: bona fide holder; evidence.*

understood that paper procured in pursuance of the scheme was to be used with the plaintiff bank as collateral for money advanced; and that while, perhaps, none of the indebtedness of the fence company to the bank was contracted prior to the time that defendant's notes were transferred to the bank, the whole arrangement was carried out in pursuance of plans already formed, of which the officers of the bank were fully cognizant. Indeed, it appears that the officers of the bank, in making the arrangement by which the paper procured by the fence company was to be used as collateral, knew that the individuals or officers who came to Iowa to represent the fence company, and who carried on the negotiations with the subscribers to the contract in question, were to come for that purpose. There is no evidence that the cashier of the plain-- tiff bank had notice of any defenses to the notes at the time he accepted them as collateral, but he did know, as it appears, that there was a general arrangement by which such notes, when procured, should be accepted as collateral; and we think it is not open to the plaintiff bank, whose officers entered into the perfecting of the preliminary scheme in accordance with which the notes of subscribers were to be taken and transferred to the bank as collateral security, and who were at the same time officers of the fence company, sending representatives into Iowa to carry out the scheme, to say that they were not chargeable with notice of any agreements made or frauds perpetrated by such representatives while acting for the fence company.

As to the collateral agreement that the notes should not be transferred, and that they could not be collected, save as satisfied by dividends from the stock, the burden was, no 5. BILLS AND doubt, on the defendant to show that plaintiff's NOTES: burden of proof. officers had knowledge of such an arrangement when the notes were transferred to them; but, as to want of consideration and fraud in procuring the subscription, if shown, the burden of proof was on the plaintiff to show that its officers had no knowledge of these defenses, and the evi-

dence did not make such a clear case of want of notice as to justify the court in taking the case from the jury. The action of the lower court in directing a verdict for plaintiff was therefore erroneous, and the case must be remanded for a new trial.— *Reversed.*