## MEYER v. GUARDIAN TRUST CO.

(Circuit Court of Appeals, Eighth Circuit. February 29, 1924.)

No. 6318.

1. **Courts ⬅325—Effect of admission of jurisdictional facts.**

Acquiescence by counsel for defendant, by silence, in a statement to the court by counsel for plaintiff that diverse citizenship, which was alleged in the petition, was admitted, *held* to relieve plaintiff of the necessity of proving the allegation of citizenship.

2. **Bills and notes ⬅537(4)—Evidence held sufficient to require submission of defense of duress to jury.**

Evidence introduced or offered, showing that defendant signed the notes in suit because of threats that, if he did not, his son would be prosecuted

for forgery, *held* to require. submission of the question of duress, pleaded as a defense, to the jury, if that defense was available to defendant.

3. **Contracts ⊙⟫100—Defense of duress; fact of duress question for jury.**

What constitutes duress is a matter of law, but whether such duress exists as to a particular transaction is a question of fact.

4. **Bills and notes ⊙⟫337—Purchasers before maturity; evidence to impeach good faith.**

A purchaser of negotiable paper for value before maturity does not owe the maker the duty of making active inquiry into the origin or consideration of the note, and his status as a bona fide purchaser cannot be impeached by evidence that he had notice of suspicious circumstances, or of his negligence in failing to make inquiry, but only by showing his actual bad faith, by purchasing with knowledge of, or willful disregard of, facts which were available and at hand.

5. **Bills and notes ⊙⟫537(6)—Question of bona fide purchaser held one for the jury under the evidence.**

After plaintiff bank had purchased one of a series of notes, to which the signature of defendant as a comaker with his son had been forged, it was advised by defendant, in response to a notice, that he had not signed the note. Plaintiff then intrusted the note to a·third person, who, with that and the other notes of the series, went to see defendant in another state. There were threats by him and also by plaintiff, in a telegram shown to defendant, to prosecute the son for forgery, and under such circumstances defendant signed new notes in renewal of the old. The facts were reported to plaintiff, which afterward purchased the remaining notes of the new series. *Held*, that the question whether it was a bona fide purchaser, not subject to the defense of duress, pleaded by defendant, was one for the jury.

6. **Bills and notes ⊙⟫113—Maker estopped to deny validity by representations to intending purchaser.**

Where the maker of a note represents to an intending purchaser that the same is valid, and that he will pay it, and by so doing induces its purchase by such person, in an action against him on the note, he is estopped from setting up a defense thereto, or questioning its validity.

7. **Bills and notes ⊙⟫537(4, 6)—Questions of duress, and knowledge of the same by a purchaser, and estoppel to claim duress, held for the jury.**

Where plaintiff was a party to the transaction in which notes were given, and had knowledge of the circumstances under which they were signed by defendant, which might amount to duress, an assurance by defendant that they would be paid, made by letter in response to an inquiry by plaintiff, shortly after they were given, and· when it contemplated their purchase, did not as a matter of law estop defendant from setting up the defense of duress against plaintiff; but the questions of duress, of plaintiff's good faith, and of whether the duress continued and was in existence when the letter of assurance was written, was for the jury.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action at law by the Guardian Trust Company against H. H. Meyer, first and real name unknown. Judgment for plaintiff, and defendant brings error. Reversed.

C. A. Sorensen, of Lincoln, Neb. (F. L. Bollen, of Lincoln, Neb., on the brief), for plaintiff in error.

E. J. Burkett, of Lincoln, Neb. (Burkett, Wilson, Brown & Wilson, of Lincoln, Neb., and Hindry, Friedman & Brewster, of Denver, Colo., on the brief), for defendant in error.

⊙⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before KENYON, Circuit Judge, and TRIEBER and MUNGER, District Judges.

KENYON, Circuit Judge. Defendant in error brought action in the District Court of the United States for the District of Nebraska, Lincoln Division, upon six promissory notes, aggregating the sum of $10,000, given by H. H. Meyer, Jr., and plaintiff in error, to Wm. C. Merrill, Jr., and by him assigned to defendant in error. Said notes, while given in Nebraska, were payable at Denver, Colo. The defense thereto was that they were given in place of other notes upon which the name of plaintiff in error was forged, and that they were secured by duress. The court made certain orders with reference to proof, which we think, in view of our finding here, was inconsequential and needs no discussion. The parties followed the order fixed by the court as to the introduction of evidence, and after certain evidence was introduced, and offers of the evidence, which the court refused to admit, the jury was directed to return a verdict for the defendant in error for the full amount. Afterwards, to wit, December 30, 1922, the court sustained a motion of plaintiff in error for a new trial on the first cause of action, being the cause evidencing the note originally purchased by defendant in error prior to the time of the purchase of the remaining notes. Many questions are suggested by the assignments of error. A few present the actual points in controversy.

[1] The first assignment of error relates to the question of the court's jurisdiction. The petition of defendant in error alleged that William C. Merrill, Jr., payee, as assignor of the notes sued upon, was at the time of the commencing of the suit a resident and citizen of the state of Colorado. Plaintiff in error in his answer made a general denial of the allegations of the petition, admitted residence of defendant in error in the state of Colorado, but made no admission as to the residence of Merrill, Jr. Plaintiff in error claims that the citizenship of said Merrill, Jr., was put in issue by the pleading, and that, no testimony being offered to show that said Merrill, Jr., payee of the notes, and defendant in error's assignor, was a citizen of Colorado, the court was without jurisdiction. When the case was called for trial the following took place:

"The Court: It is admitted by the pleadings here that the notes sued on were signed by the defendant. It is not denied but what the plaintiff bought the notes sued on, but sets up in reply estoppel, and matter in defense is denied.

"Senator Burkett: Yes, your honor, everything is admitted, the jurisdiction, the amount, diverse citizenship, the execution of the notes, defendant pleading no consideration, and obtaining of them by fraud and duress."

Counsel for plaintiff in error were present in the courtroom participating in the proceedings. The statement made by counsel for defendant in error that diverse citizenship was admitted was acquiesced in by the silence, if not otherwise, of counsel for plaintiff in error. While jurisdiction could not be conferred by consent, the statement of counsel to the court and the acquiescence on the part of plaintiff in error's counsel was an admission of the essential fact, namely, diverse

citizenship. We think this settles that proposition, and there is no need to discuss the question of whether or not the general denial put in issue the citizenship of Merrill, Jr., payee and assignor. We pass, therefore, to the real questions of the case.

Assignments of error 2, 3, and 4, relative to the action of the court in charging the jury to return a verdict for the plaintiff, and in not submitting to the jury for determination the issues between the parties, raise the fundamental and controlling controversies of the case. Errors pointed out in other assignments are quite generally dependent upon the conclusion as to the merits of assignments 2, 3, and 4. For instance, the alleged error in not permitting plaintiff in error to show circumstances surrounding the taking of the notes as bearing on the question of duress was immaterial, if in fact the defendant in error was a holder in due course without notice of duress. We shall therefore discuss the three fundamental propositions which are involved in the case, and which are raised by the assignments of error.

First. Was there sufficient evidence, either admitted or offered, to submit to a jury the question of duress in securing said notes?

Second. Was the defendant in error a holder in due course of the notes sued on, and without notice of the infirmities in or defenses to the notes, and was this a question for the jury? \

Third. Was plaintiff in error estopped by certain letters written by him to defendant in error before the purchase of the notes to raise the question of notice of the alleged duress?

These in their order.

[2] I. It is quite apparent from the record that in the admitted and offered testimony there was evidence from which a jury could find that defendant in error assigned said notes because of threats that his son would be prosecuted and sent to the penitentiary for alleged forgery as to the first notes given. Whether Angus, the party making such threats, was or was not the agent of the defendant in error, is immaterial on this branch of the case. If the mind and will to contract of defendant in error was destroyed by the threats, and if while in such condition he signed the notes, then there was duress. Whether or not such was the fact was a question to be determined by a jury.

[3] What constitutes duress is a matter of law. Whether such duress exists as to a particular transaction is a matter of fact. The query is: Was the will power of the person signing overcome by the threats? This court held, in International Harvester Co. v. Voboril, 187 Fed. 973, 110 C. C. A. 311, that:

"Duress may be caused by threats of a criminal prosecution of a husband, wife, child, or other near relative of the person whose action is thereby controlled, though no crime has in fact been committed or prosecution begun. If the contracting party has been so put in fear as to be deprived of the free will power essential to contractual capacity, the transaction thereby induced may be avoided."

In that case the party signing the notes was coerced by threats that her husband would be arrested and jailed unless she signed and guaranteed the notes, and that was held sufficient to constitute duress. The court held that testimony of the condition of the defendant and the

state she was put in by the threats should have been admitted, and that the court erred in not admitting the same.

In Henry et al. v. State Bank of Laurens, 131 Iowa, 97, 107 N. W. 1034, it was held that a threat to prosecute the maker's brother for embezzlement and to send him to the penitentiary was sufficient to show duress; the party alleging that she signed the instrument in suit because of such statements and would not otherwise have done so.

The Nebraska rule as to this is laid down in Nebraska Mut. Bond Ass'n v. Klee, 70 Neb. 383, 387, 97 N. W. 476, 478, as follows:

"To constitute duress sufficient to avoid a contract in this state, the means adopted need only be of a character necessary to overcome the will and desire of the injured party, whether that person be below or above the average person in firmness and courage, and whether the means employed come clearly within the common-law definition of duress or otherwise."

In the early case of U. S. v. Huckabee, 16 Wall. 431, 21 L. Ed. 457, the rule as to duress is stated thus:

"Duress, it must be admitted, is a good defense to a deed, or any other written obligation, if it be proved that the instrument was procured by such means; nor is it necessary to show, in order to establish such a defense, that actual violence was used, because consent is the very essence of a contract, and if there be compulsion there is no binding consent, and it is well settled that moral compulsion, such as that produced by threats to take life or to inflict great bodily harm, as well as that produced by imprisonment, is sufficient in legal contemplation to destroy free agency, without which there can be no contract, because in that state of the case there is no consent. Unlawful duress is a good defense to a contract, if it includes such degree of constraint or danger, either actually inflicted or threatened and impending, as is sufficient in severity or apprehension to overcome the mind and will of a person of ordinary firmness."

See, also, Barnett Oil & Gas Co. v. New Martinsville Oil Co. (D. C.) 254 Fed. 481; Galusha et ux. v. Sherman et al., 105 Wis. 263, 81 N. W. 495, 47 L. R. A. 417; Schultz v. Catlin, 78 Wis. 611, 47 N. W. 946; Hullhorst v. Scharner, 15 Neb. 57, 17 N. W. 259; Morrill et al. v. Nightingale et al., 93 Cal. 452, 28 Pac. 1068, 27 Am. St. Rep. 207; Morrison v. Faulkner, 80 Tex. 128, 15 S. W. 797; Thompson et al. v. Niggley et al., 53 Kan. 664, 35 Pac. 290, 26 L. R. A. 803; also 2 Greenleaf on Evidence (14th Ed.) note to section 301; Joyce, Defenses to Commercial Paper, § 105.

There was sufficient evidence introduced or offered to make the question of whether the notes were given under duress one for the jury. Therefore it was error to preclude evidence as to this, provided: (a) That defendant in error was not a holder in due course without notice of duress; (b) that plaintiff in error was not estopped as a matter of law to question the right of defendant in error as a holder in due course.

[4] II. Was defendant in error as a matter of law under the record a holder in due course, in good faith, of the notes sued upon? Were the facts and circumstances such as to make the question of notice, upon the part of the defendant in error, of duress a question of fact for the jury? Defendant in error claims to be a purchaser of the notes in suit before maturity, with no notice of any facts impeaching their validity or of any defenses of the makers. On the other hand, it is

the theory of plaintiff in error that defendant in error knew from all the facts and circumstances that the notes were without consideration on the part of plaintiff in error, were given in place of forged notes, and given under duress. The court, in instructing the verdict,' evidently was of the opinion that the facts and circumstances were not sufficient to show notice to defendant in error of these matters. A person is not a bona fide holder of negotiable paper, when he has actual notice or knowledge or constructive notice amounting to actual notice or knowledge of infirmities constituting valid defenses and equities between prior parties. Joyce, Defenses to Commercial Paper, § 473. Mere suspicious circumstances are insufficient to .necessitate inquiry and prevent a person from being a bona fide holder. There must be actual bad faith. Neither is negligence in failing to inquire sufficient to establish bad faith. One of the early leading cases on this question is Murray v. Lardner, 2 Wall. 110, 121 (17 L. Ed. 857). The court said.:

"Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part. The burden of proof lies on the person who assails the right claimed by the party in possession. Such is the settled law of this court, and we feel no disposition to depart from it. The rule may perhaps be said to resolve itself into a question of honesty or dishonesty, for guilty knowledge and willful ignorance alike involve the result of bad faith."

The same doctrine is laid down in Hotchkiss v. Bank, 21 Wall. 354, 359, 22 L. Ed. 645, Kneeland v. Lawrence, 140 U. S. 209, 11 Sup. Ct. 786, 35 L. Ed. 492, and many other decisions of the Supreme Court. Clark v. Evans et al., 66 Fed. 264, 13 C. C. A. 434, held likewise as follows:

"One who purchases a negotiable note for value before maturity does not owe the maker the duty of making active inquiry into the origin or consideration of the note, before purchasing the same. His right to recover can only be defeated by showing that he had actual notice of the facts which impeach the validity of the paper."·

The federal rule is also well expressed in Atlas Nat. Bank v. Holm et al., 71 Fed. 489, 491, 19 C. C. A. 94, 96:

"There has been a contrariety of rulings on the subject, but the weight of authority has long been' (in the federal courts, certainly, since Swift v. Tyson, 16 Pet. 1) that one who takes an assignment of commercial paper before maturity, paying value, without notice of infirmity in the title or consideration, is deemed a good-faith purchaser, and that, to deprive him of that character, it is not enough that he neglected to make the inquiry which under the circumstances a prudent man would or ought to have made. It is not a question of negligence, but of bad faith."

Likewise in Doe v. Northwestern Coal & Transportation Co. (C. C.) 78 Fed. 62, 68; also In re Hopper-Morgan Co. (D. C.) 156 Fed. 530. State cases to the same effect are Bank v. Cook, 125 Iowa, 111, 100 N. W. 72; Russ Lumber & Mill Co. v. Muscupiabe Land & Water Co., 120 Cal. 521, 52 Pac. 995, 65 Am. St. 'Rep. 186; Wisconsin Yearly Meeting of Free Will Baptists v. Babler, 115 Wis. 289, 91 N W. 678; William Lehman v. Press, 106 Iowa, 389, 76 N. W. 818; Smith v. Living-

ston, 111 Mass. 342; Robbins v. Swinburne Printing Co., 91 Minn. 491, 98 N. W. 331, 867; Tourtelot v. Reed et al., 62 Minn. 384, 64 N. W. 928; Keene v. Behan et ux., 40 Wash. 505, 82 Pac. 884; Borgess Inv. Co. v. Vette et al., 142 Mo. 560, 44 S. W. 754, 64 Am. St. Rep. 567; First State Bank v. Borchers, 83 Neb. 530, 120 N. W. 142; Benton v. Sikyta, 84 Neb. 808, 122 N. W. 61, 24 L. R. A. (N. S.) 1057. The doctrine in the case of Clark v. Evans, 66 Fed. 263, 13 C. C. A. 433, is approved by this court in Bassett v. Evans et al., 253 Fed. 532, 165 C. C. A. 202. See, also, In re Hopper-Morgan Co. (D. C.) 156 Fed. 525. The citation of further authorities on this proposition is superfluous.

The statutes both of Nebraska, where the notes were made, and of Colorado, where the notes were payable, define what is a holder in due course, and both statutes contain this provision in defining such holder:

"Fourth—That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Both statutes have a provision that the title to the instrument is defective when the signature thereo is obained by fraud, duress, or force and fear. Both statutes provide that, to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith. So that, by the statutes of the state where the instrument was made and of the state where it was payable, as well as by the doctrine of most of the federal and state courts, defendant in error here would be protected in its purchase of the notes in question, unless its action amounted to bad faith. They sustain the doctrine that bad faith in the purchaser of a note is not established by facts sufficient to create a suspicion, nor negligence in failing to make inquiry, but bad faith is shown either from actual knowledge or a willful disregard of and refusal to ascertain the facts when they are available and at hand.

[5] The question, then, is squarely presented in this case, barring for the time the question of estoppel: Was the plaintiff in error, under the evidence admitted or offered, entitled to have the question of bad faith as to defendant in error in acquiring said notes submitted as a question of fact for a jury to pass on? It fairly appears, from the evidence introduced and offered, that after defendant in error had purchased the first note of the first series of notes purporting to be signed by plaintiff in error and his son, the president of defendant in error, one Platt, wrote plaintiff in error as to these notes, and he was advised by letter from him that he had not signed the notes. So the defendant in error then had notice that the note which it purchased, as well as the other notes which it was contemplating purchasing, were forged instruments. One Angus, who negotiated the sale of the first note to defendant in error, was negotiating the sale of the other notes from Merrill to the defendant in error. Platt called in Angus and acquainted him with the letter from plaintiff in error branding the notes as forgeries. Angus then took the note which defendant in error had purchased, and the other notes of the series, and went to Nebraska to see

plaintiff in error, Meyer, with a letter from the defendant in error, "Exhibit No. 21," in part as follows:

"One of our depositors, Mr. N. L. Angus, who will present this letter, is going to your neighborhood on business for himself, and we have asked him to see you and have explained the entire situation to him, and he will be able to tell you how we feel regarding the matter better than we can write it. Will you please confer with him, and I hope an understanding may be reached."

This letter was read to Meyer by Angus. Certainly as to the particular note owned by the bank and intrusted to Angus by defendant in error bank for him to reach an understanding in relation thereto, he was acting as agent for the bank. While the defendant in error may have been contemplating the purchase of the other notes, that was not a matter of its immediate concern, and as to this Angus was not acting as its agent. On the question of notice, however, his agency is not particularly important, as the information he received from Meyer as to the circumstances surrounding the taking of the new notes was transmitted to the defendant in error upon his return. The record could certainly justify such inference.

During the time that Angus was in Nebraska, trying to arrange with plaintiff in error for new notes, the defendant in error sent to him the following telegram:

"Exhibit 26.

"Denver, Colo., Nov. 19, 1921.

"N. L. Angus, Lincoln, Nebr. Why don't you wire us if Meyer signature is genuine we will delay criminal action no longer wire us quickly.

"Guardian Trust Company."

It is claimed in the argument of counsel for defendant in error that this telegram did not necessarily refer to a prosecution of plaintiff in error's son, but might have referred to the prosecution of Angus. We think it can hardly be so contended, in view of the testimony of Platt, president of defendant in error corporation, that at the time he sent the telegram criminal action was contemplated against plaintiff in error's son, and in view of the question asked him, "What was the consideration for which you were willing to stop criminal action?" and the reply, "If we were reimbursed for the forgery, of course, the matter would not be pressed." It cannot reasonably be contended that the telegram referred to any prosecution except the prosecution of plaintiff in error's son. It may have been, of course, a mere coincident, without any previous arrangement, that it was sent and arrived at a very opportune time in the process of influencing plaintiff in error to give the new notes. Reference should be made also to Exhibit No. 22, written on the back of Exhibit No. 21, the letter hereinbefore referred to from the defendant in error to Meyer, as follows:

"Exhibit 22.

"Dear Mr. Meyer: I felt that it was my duty to see again before notifying the Bank these indorsements was forgeries. As it can be fixed and say Herman at no expense to you. After seeing you yesterday I wired the bank I had seen you but made no settlement. You can see there reply they don't know as yet, whether the signature is yours or not and can't do anything to

Herman untill I notify them for sure. Mr. Meyer I don't want to see Herman go to the penitentiry of do you and would suggest you come to town this afternoon and see me. Will wait at Lincoln, Hotel untill you come in.

"N. L. Angus."

At the time of Angus' visit to plaintiff in error there was a family conference, and after the conference, and after plaintiff in error was acquainted with the telegram, Exhibit No. 26, likewise Exhibit 21 and Exhibit 22, he signed a new note to take the place of the one the bank had purchased, and also signed the other notes in suit to take the place of the forged ones. Angus then returned to Platt and reported to him what was done, and stated that Meyer had to sign the new notes to replace the others. Platt knew the notes were given in place of the forged ones; knew there had been talk of criminal prosecution; must have so known, in view of the telegram he sent to Angus; knew of the family conference, and that Meyer had to sign the notes. It is not much of a tax on credulity to believe that the entire matter was talked over between Platt and Angus; and whether Angus was agent or not, a jury could find that Platt knew from Angus when the notes were brought back by him of the circumstances of their taking. We do not, of course, mean to weigh the evidence in any way, or to suggest what a jury should do. We are satisfied that under the evidence offered and introduced it was a question of fact for the jury whether or not defendant in error under all the circumstances had notice of the duress, if the jury should find duress to have existed when the notes in suit were signed, and whether it was guilty of bad faith in taking them.

[6] III. There remains a very important question. Even if the notes were given under such duress as to constitute a defense, and even if the question of notice as to defendant in error of such defense or infirmity was for the jury, yet, in view of the situation, is the plaintiff in error not estopped to question the good faith purchase of the notes by defendant in error? It is a sound principle of law and common honesty that, where a maker of a note represents to an intending purchaser that the same is valid and that he will pay it, and by so doing induces its purchase by said person, in an action against him to enforce the note he will be estopped from setting up his defense thereto or questioning its validity. Joyce, Defenses to Commercial Paper, § 653; Enslen v. Mechanics' & Metals Nat. Bank of City of New York, 255 Fed. 527, 166 C. C. A. 595; Strang et al. v. MacArthur Bros. Co., 212 Pa. 477, 61 Atl. 1015; Shipley v. Reasoner, 87 Iowa, 555, 54 N. W. 470; Rosenplanter v. Toof, 99 Tenn. 92, 41 S. W. 336.

[7] What is the record as to this? After the return of Mr. Angus to Colorado, and after his conference with Mr. Platt, defendant in error sent the following telegram:

"November 26, 1921.

"H. H. Meyer, Sr., Roca, Nebraska.

"Angus has delivered your notes ten thousand dollars please wire whether everything is regular and you intend to pay them at maturity provided your son does not do so. The Guardian Trust Company."

Plaintiff in error replied on November 27, 1921, with the following letter:

"Exhibit 13.

"Roca, Nebr., Nov. 27, 1921.

"Gurdine Trust Co., Denver, Colo.

"Received your telegram to-day and as I can not send a telegram from here on Sunday thought I would write. I sind them Notes but with the understanding that them notes cold be renned as I have not the ready cash now.

"Yours truley                    H. H. Meyer, Roca, Nebr."

November 30, 1921, defendant in error sent the plaintiff in error the following telegram:

"November 30, 1921.

"H. H. Meyer, Sr., Roca, Nebraska.

"Your letter says you signed notes with understanding they could be renewed if you cannot pay these when first due and wish to renew can you advise us definitely how soon we could be sure of payment in full please wire answer at our expense.                    ·The Guardian Trust Company."

Plaintiff in error replied as follows:

"Roca Nebr 516 P 30 Q 79 1921 Nov 30 P M 4 45

"The Guardian Trust Co Denver Colo.

"If Herman Dont Pay Notes Dont Think I Could Pay Much On Them Under Six Months But Will Be Paid.

"95 10 1.05                    H. H. Meyer."

On the strength either of all of these communications from plaintiff in error, or some of them, at least, defendant in error claims that it purchased the notes. It discounted them $1,600. Were there no question of duress involved, these letters would be ample to create an estoppel in the case. Plaintiff in error contends, however, that the letters and telegrams were sent under the same duress that existed when the notes were signed, and therefore the same would not be a ratification of the signing of the notes, and could not create an estoppel. It is true that if, at the time of the writing of the letters and the telegram, Meyer was under the same duress as at the time of giving the notes—if such duress in fact existed at that time—then there could be no estoppel. We refer to some authorities on this very interesting subject.

In Henry v. State Bank of Laurens, 131 Iowa, 97, 100, 107 N. W. 1034, 1036, hereinbefore referred to, where a sister signed notes on the threat of a bank president to prosecute her brother for embezzlement, it was claimed that, as she held the notes a few days after the signature, she ratified the act; in other words, was estopped. As to this the court said:

"All that is shown is that delivery of the instruments was postponed for a few days by agreement, and that they were finally delivered with plaintiff's consent. They were delivered at a time when the influence of the threats and duress were presumed to continue, and there is no evidence to overcome this presumption."

In Enslen v. Mechanics & Metals Nat. Bank, 255 Fed. 527, 166 C. C. A. 595, the party gave a new note to the bank, taking up the old one, and then sought to make the defense of fraudulent representation, by the person to whom the original note was entrusted for discount. The court held that the doctrine of estoppel applied, and that the defense

of fraudulent representations could not be successfully invoked. The difference, however, between that case and this, is readily apparent.

In Callanan et al. v. Shaw, 24 Iowa, 441, 448, 449, it was claimed that Shaw was estopped from setting up the defense of usury to a note because he had informed plaintiff's assignee before its purchase that there was no usury in the note. The court approved an instruction to the jury:

"That if Shaw represented to the plaintiffs, prior to their purchase of the larger note, that, it was all right, and that there was no usury in it, and they took it, relying upon such representations, and without any knowledge of its being usurious, he is estopped from setting up the defense of usury. But if. plaintiffs knew at the time they purchased the note that it was usurious, such representations of Shaw, if he made them, would not operate as an estoppel."

In Watson v. Hoag, 40 Iowa, 142, defendant informed plaintiff before the transfer of the notes that they were all right, that no defense existed to them, and that they would be paid; but the court says the evidence shows that plaintiff knew of the usury at the time, and says (pages 143, 144):

"We think the statement of defendant, that the notes were without defense, was drawn from him as a device to cover up the unlawful nature of the con-tract, and that plaintiff knew the real facts at the time, and was a party to the contrivance by which the declarations were elicited. We think they were a part of the fraudulent acts of the transaction, and the court's conclusion that plaintiff did not, in good faith, rely upon them, is correct. He is not, therefore, a transferee, in good faith, of the paper, and cannot be protected against the defense of usury."

In Hill v. Thixton, 94 Ky. 96, 104, 23 S. W. 947, 949, where a party, simultaneously with the execution of a note obtained by fraud, obtained from the maker a statement that there was no defense to the note and that it would be paid, the maker was held not estopped to defend against the note in the hands of the assignee; the court using this significant language:

"Upon presentation of the note alone of the appellant, importing as it did, a valid consideration, and containing an express promise to pay, in the usual form, a purchase would have been more in accordance with the usual course of trade than when the holder shows evidence of the necessity of fortifying his property by a suspicious overshow of virtue. It was a state-ment on which they had but slim right to rely. It was, indeed, calculated to arouse and excite suspicion. An ordinary and unsuspicious looking promis-sory note was in bad company when it had to be backed up by such an un-usual paper."

In Holzbog v. Bakrow, 156 Ky. 161, 160 S. W. 792, 50 L. R. A. (N. S.) 1023, the court said:

"An assignee of a note based on a gambling transaction, with knowledge of the consideration upon which it is based, cannot enforce payment of it, al-though before he purchased it the maker assures him that it is valid and will be paid."

See Stuart v. Harmon (Ky.) 72 S. W. 365; Glass v. Murphy, 4 Ind. App. 530, 30 N. E. 1097, 31 N. E. 545; 21 Corpus Juris, p. 1138, § 137.

If the jury should, under the evidence, find as a question of fact that the notes were given under duress, and further as a question of fact

that the duress continued and existed at the time the letters were written, and that defendant in error knew of this duress, then there would be no estoppel. There would be no presumption that the duress, if at all, continued to the time of writing the letters. That would be a matter of proof. It seems to us clear that the issues in this case, of alleged duress at the time the notes were given, of notice to defendant in error of such duress, of the duress continuing down to and including the time the letters were written, and whether the notes were given and the letters written as a result of the duress, were fairly questions of fact for the jury, the law in relation thereto being settled and not difficult of understanding.

The case is therefore reversed and remanded, with instructions to grant a new trial.